TRACY LOAN & TRUST CO. v.
OPENSHAW INV. CO. et al.

No. 6428. Decided December 30, 1942. (132 P. 2d 388.)

See 31 C. J. S., Estoppel, sec. 122; 19 Am. Jur., 712.

*Jesse R. S. Budge,* of Salt Lake City, for appellant.

*E. A. Rogers, H. G. Metos,* and *Romney, Romney & Boyer,* all of Salt Lake City, for respondents.

McDONOUGH, Justice.

This action was brought under the declaratory judgment statutes, Chap. 64, Title 104, R. S. U. 1933, by the administrator of the estate of Jonathan E. Openshaw, against all of the heirs at law of decedent, his widow, and Openshaw Investment Company, a Utah corporation, to determine ownership and rights with respect to certificate No. 1 for 638 shares of stock in said corporation.

Jonathan E. Openshaw died February 21, 1940, and he left both real and personal property. The certificate in question was issued to "Jonathan E. Openshaw, Trustee" on March 22, 1927, as part of the original stock issue. The certificate had not been transferred on the books of the corporation to any person up to date of filing of this action, but at the time of commencement of the suit, it was in the

possession of defendant Clarence R. Openshaw, who is referred to variously as C. R. Openshaw and also as Dr. C. R. Openshaw. This certificate carried the endorsement of "Jonathan E. Openshaw, Trustee." Both before commencement of the action and by answer to the complaint C. R. Openshaw claimed he was the beneficial owner of the 638 shares of stock at all times, and that said stock was issued by said corporation at his request to his father as "trustee."

The trial court found in favor of defendant C. R. Openshaw, and entered judgment in his favor reciting that at the time of death of decedent said defendant was the owner and in possession of said stock. By this appeal the plaintiff contends: (1) The evidence is insufficient to support the judgment, (2) the defendant was incompetent to testify in support of his claim of beneficial ownership, (3) the testimony as to alleged delivery of the endorsed certificate to said defendant prior to death of decedent is incompetent, and (4) that in view of the denial under oath in the divorce action, as to ownership of anything in said corporation except 50 shares of stock, and by reason of the fact he obtained relief by way of reduction of alimony payments through his testimony of lack of assets, he is judicially estopped in this action to assert ownership of certificate number 1 for 638 shares of stock of said corporation.

We shall first consider the contention of appellant that defendant C. R. Openshaw is judicially estopped from asserting ownership of the 638 shares of stock in view of his former conduct and testimony. When the Openshaw Investment Company was organized on February 9, 1926, all of its capital stock of 1,000 shares was fully subscribed and paid for by the conveyance of certain property to the corporation. In the articles of incorporation Jonathan E. Openshaw subscribed for 895 shares, and he was designated president and director. Frank M. Openshaw subscribed for 36 shares and he was designated secretary and director. Clarence R. Openshaw subscribed for only 50 shares, and he was named vice-president and director. Other relatives were subscribers

for smaller amounts. Those three men executed the jurat required by law to be signed by three of the incorporators and they declared under oath that they had paid in full for the stock. No stock was actually issued until March 22, 1927, at which time certificate number 1 was issued to "Jonathan E. Openshaw, Trustee" for 638 shares, certificate number 2 was issued to Jonathan E. Openshaw for 198 shares, and certificate number 3 was issued to Clarence R. Openshaw for 50 shares.

After defendant Clarence R. Openshaw testified in this suit, counsel for the administrator read into the record evidence by way of rebuttal and estoppel, the testimony of said defendant in a divorce action in the same court filed August 2, 1921; and counsel introduced in evidence the file and record of proceedings in said divorce action in which Margaret C. Openshaw was plaintiff and said Clarence R. Openshaw was defendant. It appears from such record in the divorce action, which came to trial after organization of said corporation, said defendant denied ownership of any property except a home on Ninth East Street in Salt Lake City, and 50 shares of stock in Openshaw Investment Company, and a few other securities in addition to office equipment. He also testified that he was indebted to said company in the sum of $6,300 on two promissory notes, and that he received no income from said company except by way of dividends credited on said notes. On the basis of such testimony of lack of sufficient assets and his positive declarations that he had not made any money for five years and that he was constantly running deeper into debt, the trial court entered an order for alimony to be paid in the sum of $175 instead of a larger sum which his wife claimed was reasonable in view of her claim that he had substantial assets and ability to pay.

The defendant appealed from the judgment in the divorce action to this court, and one of the grounds for appeal was his claim that the award of alimony was excessive in view of his impoverished condition. This court relied on his

testimony that he lacked financial ability to pay the $175 and ordered the alimony reduced to $150 per month. *Openshaw* v. *Openshaw*, 80 Utah 9, 12 P. 2d 364. On December 1, 1932, following the modification of said judgment by this court in the particular recited, the defendant testified before a referee that he owned 50 shares of stock in the Openshaw Investment Company; that his father had charge of it and that it was his father's business, and that defendant then did not have any stock in said corporation. On his further plea of poverty he obtained a further reduction in alimony to $100 per month on May 19, 1933.

The testimony of Clarence R. Openshaw in the divorce proceedings was almost diametrically opposite to his verified pleadings and testimony in the present case. In the present suit he testified that he paid over to the Openshaw Investment Company thousands of dollars and that he owned the 638 shares of stock in addition to the 50 shares, and that he furnished the major part of the property and securities which went into the company. His testimony was positive in both cases. In fact, the testimony indicates that he made his statements as to the purported facts carefully and deliberately. Counsel for appellant contends that inasmuch as he knew the facts all the time, he either perjured himself in the divorce action or in this case; and that the law does not permit a litigant to play fast and loose with the courts so as to give testimony to suit his own purposes in one action and then in a later action be permitted to contradict his testimony because it is advantageous for him to do so. Appellant contends that the rule of "judicial estoppel" applies to bar Clarence R. Openshaw from asserting ownership of the 638 shares of stock issued to his father as trustee, for the reason his prior testimony amounts to a sworn declaration that he had no stock nor any interest in any stock except the 50 shares which he swore in 1932 he then no longer owned.

The general rule of "judicial estoppel" or "estoppel by oath" is stated in 19 Amer. Jur. 712. Most of the decided

cases hold that the rule may be invoked only where the prior and subsequent litigation involves the same ■ parties, and where one party has relied on the former testimony and changed his position by reason of it. In other words, a person may not, to the prejudice of another person deny any position taken in a prior judicial proceeding between the same persons or their privies involving the same subject-matter, if such prior position was successfully maintained. *Pratt* v. *Paris Gas Light & Coke Company*, 168 U. S. 255, 18 S. Ct. 62, 42 L. Ed. 458; *Sinclair Refining Co.* v. *Jenkins Petroleum Process Co.*, 1 Cir., 99 F. 2d 9, certiorari denied 305 U. S. 659, 667, 59 S. Ct. 362, 83 L. Ed. 427, 1062, 1530.

A majority of the cases hold that the party invoking the rule of estoppel must show that he has done something or omitted to do something in reliance upon the conduct of the other party by reason of which he will be preju- ■ diced now if the facts are shown to be different from those on which he relied; but there is no estoppel where there was no reliance and the parties had equal knowledge of the facts. *Galt* v. *Phoenix Indemnity Co.*, 74 App. D. C. 156, 120 F. 2d 723. See *Macan* v. *Scandinavia Belting Co.*, 264 Pa. 384, 107 A. 750, 5 A. L. R. 1505; *Hatten Realty Co.* v. *F. A. Baylies*, 42 Wyo. 69, 290 P. 561, 72 A. L. R. 587; *Helfer* v. *Mutual Benefit Health & Accident Assoc.*, 170 Tenn. 630, 96 S. W. 2d 1103, 113 A. L. R. 921, 925, 929, 930.

In this case the administrator represents the interests of the decedent, and there is nothing in this case which shows that Jonathan E. Openshaw did or refrained from doing anything which prejudiced him in any manner, or that the administrator did or refrained from doing anything to its prejudice or to the prejudice of heirs or creditors. It is true, of course, that this action may have been commenced in reliance on the former testimony, but that ■ alone is not sufficient to invoke the rule of estoppel against defendant C. R. Openshaw regardless of how reprehensible his conduct is deemed to be by this court. The fact

said defendant claimed he was in rightful possession and was the beneficial owner of said endorsed certificate was known at the time this action was filed. Where a party seeks to raise an estoppel to a claim set forth in the pleadings,, facts constituting an estoppel must be pleaded. *Barber* v. *Anderson,* 73 Utah 357, 274 P. 136.

Counsel for appellant relies on the cases of *Hatten Realty Co.* v. *Baylies,* 42 Wyo. 69, 290 P. 561, 72 A. L. R. 587, and *Sartain* v. *Dixie Coal & Iron Co.,* 150 Tenn. 633, 266 S. W. 313. The latter case follows a rule established in Tennessee, that in the absence of mistake as to facts, inadvertence or misapprehension as to the law, one who take a positive position in one case as to the facts, will be estopped to deny or alter such position or statement in a subsequent action although the parties may not be the same. The rule is based on public policy and not predicated on any prejudice to an adverse party. It appears to be a punitive rule to deter a litigant from testifying falsely, and thereby use the judicial system to perpetrate fraud.

In *Hatten Realty Co.* v. *Baylies,* supra, the real estate concern was employed by defendant to sell or exchange certain real property owned by defendant. The company made the exchange and defendant gave five promissory notes aggregating $2,500 to cover the commission. Subsequently defendant brought a suit against the purchaser to rescind the exchange on the ground of fraud, and he obtained a judgment which included as an item of damage the $2,500 which he testified in the fraud action he paid the real estate company, which company was in no way a party to the fraud. He renewed the notes and the real estate company sued him on the renewal notes after he had obtained judgment based in part on his claim that he paid $2,500 to said company. The court held that by reason of the fact he had obtained a judgment including the item of $2,500 in a suit on the notes brought by the real estate company he was not in a position to deny liability thereunder. The Supreme Court of Wyoming, while stating that the Tennessee courts

probably go too far, nevertheless indicated it would apply the doctrine of judicial estoppel to that particular state of facts in affirming judgment for the plaintiff.

The general rule is that testimony given by a witness in a prior action, except where the parties are the same and there is reliance to the prejudice of the party invoking the rule of estoppel, such testimony in the prior action merely constitutes evidence which may be employed to impeach the witness or to contradict his inconsistent testimony in the subsequent action.

To apply the Tennessee doctrine in this case might result in laying down a rule which would operate to injure innocent parties and creditors. If the reason underlying the Tennessee rule is to punish the witness, its application might punish other parties more severely. For example, if the former wife of defendant was defrauded by the solemn representations made in the divorce proceedings, she may not be without recourse if the prevailing rule be applied, while if C. E. Openshaw be held estopped to claim title to the property in controversy she might be denied recourse to the only property from which she might obtain legal or equitable redress.

If a witness commits perjury, even though the statute of limitations bars prosecution for such offense by reason of lapse of time, a person who testifies falsely can be reached by contempt proceedings, which may in many instances have a more salutary effect than preventing a witness from finally telling the truth. If a party litigant comes into court and falsifies, such conduct should not be employed to prevent him from telling the truth in a later action where there has not been any reliance on such false testimony, particularly where a rule estopping him from telling the truth would operate to injure innocent persons and not merely punish the wrongdoer.

C. R. Openshaw is not beyond the reach of the law, even if the statute of limitations has run against any perjury which might have been committed in the divorce action.

During the trial of this case, which was conducted without a jury, the defendant Clarence R. Openshaw was permitted to testify over objection of plaintiff, that the certificate of stock in controversy was delivered to him endorsed by his father several years prior to death of the father, and that at the time it was delivered it had attached to it a slip of paper in the handwriting of Jonathan E. Openshaw containing the following statement: "This certificate of stock belongs to C. R. Openshaw." The doctor also testified over objection of plaintiff, that for many years his father acted as his agent, that he issued various checks to his father with which to purchase securities of various kinds, and that these checks went into a bank account which his father kept for him under the name of "J. E. Openshaw, Agent," from which account numerous checks were issued to purchase stocks and bonds for Clarence R. Openshaw and to pay sums of money to third parties for him. Exhibit 33 was identified by him as an agreement executed by him and his father October 24, 1924, whereby J. E. Openshaw, the father, agreed to represent and act as agent for C. R. Openshaw and handle a bank account at Utah State National Bank in Salt Lake City under the name of "J. E. Openshaw, Agent," and to purchase stocks, bonds and other securities to be used in the formation of a company to be known as "Openshaw Investment Company," and to have capital stock in said corporation in the name of "J. E. Openshaw, Trustee, for C. R. Openshaw," and to turn said stock over to C. R. Openshaw on request.

The doctor identified various checks which he issued in alleged payment of various accounts arising from purchase of securities and other properties, including Z. C. M. I. stock, Mapleton Sugar Company stock, and building and loan association securities.

The appellant assails the rulings of the trial judge, (1) in receiving such testimony in evidence and in admitting said exhibits in evidence, on the ground the facts were equally within the knowledge of the defendant-witness and

the decedent, and that the testimony was therefore incompetent under Sec. 104-49-2, subsection (3), R. S. U. 1933; (2) because said defendant thereby sought to contradict his testimony in a prior action in which he obtained judicial relief on the basis of such testimony. (3) Appellant further contends that the entire evidence does not establish the facts said defendant sought to prove by such testimony and exhibits.

We have already discussed the second proposition. As previously indicated, even when estoppel cannot be invoked, such prior testimony when properly produced constitutes evidence which the trial court or the jury should consider in determining what are the facts and to pass on the credibility of the witness. Ordinarily when a person contradicts his prior testimony because it appears to be to his advantage to do so, the veracity of such witness may become so questionable that it may require strong and convincing corroborative evidence to induce a court or jury to believe his subsequent declarations. Nevertheless, if the court finds that notwithstanding such maze of conflicting and unreliable testimony, there is other competent, material and relevant evidence unimpeached, which establishes the contention of such person who either testifies falsely or recklessly, he may still be entitled to prevail as a matter of law. If there is substantial competent evidence which is relevant and material, a finding of the court will not be disturbed, although the court might well have found otherwise.

We have examined the record and the exhibits in this case, and we are frank to say that a considerable part of the testimony of the witnesses who testified on behalf of defendant Clarence R. Openshaw, is inconsistent with the exhibits which were offered and received in evidence. The testimony of those witnesses on matters contrary to the records of the corporation, could well be disregarded or discredited because contrary to the corporate records. The question then arises as to whether or not all

such testimony of those witnesses is so closely tied up with the oral evidence as to the alleged delivery of the endorsed certificate number 1 for 638 shares, as to prevent any reasonable person from giving any credence to any of such testimony. It was admitted that the defendant C. R. Openshaw inserted his own name in the transferee blank on certificate number 1 subsequent to the time he stated his father turned it over to him, although there was never any transfer on the books of the corporation. We are not unmindful of the fact that parents frequently put their securities in a negotiable condition and entrust them to the care of certain sons or daughters for purpose of division and distribution after death, and that instead of making the distribution, the persons entrusted with such personal property under an oral agreement sometimes yield to temptation to claim such property as their own.

However, even if we disregard the testimony of Dr. Openshaw and all who were relatives and who might have had some interest in aiding him to succeed in obtaining title, there are certain exhibits in evidence which are competent, relevant and material, which support the claim of Dr. Openshaw as to ownership of the 638 shares of stock, regardless of how far he may otherwise have strayed from the truth. Disinterested witnesses identified the writing in certain books and records as the handwriting of J. E. Openshaw, and those records contain dates and entries made by said decedent. Exhibit 19 consists of a page in a journal kept by the decedent, in which he recorded a dividend of $3,000 distributed to various stockholders. He records himself "J. E. O." as having 198 shares, and "C. R. O." as having 688 shares. The articles of incorporation clearly show that the doctor subscribed for 50 shares and certificate number 3 for 50 shares was issued to Clarence R. Openshaw (Exhibit 3). The 638 shares in certificate number 1 plus the 50 shares in certificate number 3 aggregate the 688 shares noted in the memorandum written by the decedent covering the dividend above mentioned. There was distributed to

Clarence R. Openshaw by such dividend the sum of $2,064, as of December 31, 1928. Exhibit 28 also in the handwriting of decedent, records the following:

"3/22/27 J. E. O. Trustee for C. R. O. No. 1 638 shs par value 31900.oo."

Exhibit 31 consists of an entry by J. E. Openshaw under "Clarence R. Openshaw" in which there was a dividend credited on March 15, 1937, to Clarence R. Openshaw on 638 shares, and on 50 shares and on the 23 shares which were issued to him in April 1927.

Exhibit 39 is the stock certificate book, and while the name "C. R. Openshaw" appears in slightly differed colored ink from the preceding "Jonathan E. Openshaw, Trustee," and the fact that the certificate does not describe nor indicate the name of the beneficial owner, an examination of the records kept by Jonathan E. Openshaw indicates he was acting as trustee for C. R. Openshaw. The entries in the handwriting of decedent illustrate that decedent recognized his son Clarence R. Openshaw as the beneficial owner of the 638 shares and that dividends were distributed to the latter on the basis of ownership and right to receive dividends thereon.

Dr. Openshaw was rightfully in possession of the certificate in controversy for 638 shares. If the decedent had attempted to negotiate it to a third party, such third party would have been put on notice that some one claimed some beneficial interest in the certificate. See 30 Amer. Juris. p. 247, § 22. Appellant cites cases to show that the word "trustee" following a name has no significance; but we do not believe they have any application to the facts in this case, for here the person named trustee had entered into a written agreement whereby he agreed to take stock in his name as trustee, and he made various entries in his own books and records confirming such agreement and carrying into effect the trust declared by the written instrument.

There was some effort by testimony to show that Dr. C. R. Openshaw had the 638 shares of stock issued to his father as trustee to prevent the wife of Dr. Openshaw from getting more than a small part of his assets in the divorce action which she had previously instituted. The court is not concerned with motive in the determination of ownership, but with the intention of the parties in relation to the issuance of the stock to Jonathan E. Openshaw, Trustee. The fact that Dr. C. R. Openshaw with a corrupt motive devised a scheme for issuing the 638 shares to his father as trustee, either to defraud his wife or to deceive the court in the divorce proceedings and thereby limit the payment of alimony to a much smaller sum than he otherwise would have been required to pay, would not alter the trust character of this stock as between Jonathan E. Openshaw as trustee and Clarence R. Openshaw as the cestui que trust, if such fiduciary relationship was actually created. The record clearly indicates that such relationship was established. This is not a case in which a party is asking a court of equity to execute a resulting trust, the fruit of an illegal or fraudulent transaction. We are here dealing with the sufficiency of the evidence to show an express trust. Consequently the cases cited by appellant, including those discussed in the annotation found at 117 A. L. R. 1464, have no application.

Facts which cannot be impeached successfully even by the questionable testimony of defendant C. R. Openshaw, clearly show that the father did not intend to claim the beneficial ownership of the 638 shares, but he intended to recognize and he did acknowledge in writing, that his son Clarence was the beneficial owner thereof, and he granted to him the benefits of such ownership by way of dividends.

The judgment is affirmed.

MOFFAT, C. J., and WOLFE, J., and WADE, District Judge, concur.

LARSON, J., concurs in the order affirming the judgment.

PRATT, J., on leave of absence.