213 So.2d 596 (1968)
Hugo CHAVEZ-REY, Appellant,
v.
Georgina CHAVEZ-REY, Appellee.
No. 68-176.
District Court of Appeal of Florida. Third District.
August 20, 1968.
Rehearing Denied September 16, 1968.
Bretan & Marks, Miami, for appellant.
Kneale, Roberts, Kneale, Starkweather & Rodriguez, Miami, for appellee.
Before PEARSON, BARKDULL and SWANN, JJ.
*597 PEARSON, Judge.
Hugo Chavez-Rey appeals from an order vacating a divorce decree between the parties and sentencing him to sixty days for criminal contempt in the procurement of the divorce. The appellant asserts first that the adjudication of contempt was not made in accordance with due process of law and second that the divorce was vacated in contravention of due process of law.
The appellant filed a bill of complaint for divorce and an affidavit on August 31, 1965. He set forth a false address for his wife in both the complaint and the affidavit. Pursuant to this affidavit the court issued notice of publication and subsequently entered a decree pro confesso. The appellant appeared before the trial court on October 7, 1965. He testified that he was sending his wife, who was then in Peru, $250 to $350 every month. The court supplemented the examination by asking the following questions:
"THE COURT: Does your wife know about this suit for divorce?
THE PLAINTIFF: Yes.
THE COURT: How do you know that?
THE PLAINTIFF: Because my lawyer wrote to her."
A final decree of divorce was entered at the conclusion of the hearing.
On February 14, 1968, the appellee filed a petition praying that the appellant be held in contempt of court for failing to make child support payments of $7,000. The trial judge entered an order on the petition for contempt in which he directed the appellant to appear on February 16, 1968, "to show cause why you should not be in contempt of court for your failure and refusal to comply with the terms and provisions of the final decree of divorce." (For the sake of clarity we point out that the contempt to which the foregoing petition and motion to show cause refer is not the criminal contempt involved in this appeal.)
At the time designated for the hearing the appellant did not appear personally; a lawyer appeared on his behalf. This lawyer announced that he represented the appellant and requested a continuance. The court agreed to continue the appellant's response to the petition until a later date but proceeded to take the testimony of the appellee. She testified that she had never received child support payments. Upon cross examination by appellant's attorney she revealed that: prior to the divorce the appellant had sent her to Peru with their children and promised to follow her; he had written her that he did not want a divorce and that he would send tickets for his wife and children to return to this country; he did not write her that he had been divorced from her; she did not know that she had been divorced until a lawyer retained by her notified her of the divorce. Thereupon the court announced: "This man will be in trouble on two counts, on the retention of the divorce and the matter of this arrearage. It looks like this is wilful at this point without having heard from him." Thereupon the court in the presence of the attorneys continued the hearing until the morning of February 19, 1968.
At the hearing on February 19 the appellant appeared without an attorney. The court asked him where his attorney was, and he replied that he did not have an attorney. The court then stated:
"On October 7, 1965, you were in here for a divorce. At that time you testified upon interrogation by your attorney that your wife had left the country, refused to return here, that you made accommodations because of your employment for free transportation. I asked you at that time if you were supporting your family. You said you were, that you were paying $250 a month. You even suggested that you were paying $300 a month. I asked for proof. You said you didn't have it, but that it was available."
*598 After the court heard testimony to the effect that the appellant had made no child support payments, that he had listed a false address for his wife in the complaint and affidavit in 1965, and that in 1965 he had falsely testified that his wife knew about the divorce action, the court announced it would listen to anything the appellant had to say. After some discussion as to whether the appellant had ever sent money to the appellee and whether the address the appellant had given in 1965 as his wife's address had really been her address, the appellant stated:
"No, sir. But as I said, I just don't know what  I gave that address. And I just don't intend to fight anything because I am guilty, your Honor."
The following exchange later took place:
"MR. CHAVEZ-REY: I understand, your Honor, that  I know  I don't know how to say it. How bad is the situation to me, but as I said, I am just at your mercy. I am willing to comply with whatever I have to send to her now that I have a steady job. But if I lost my job I am going to be in the same situation I was before.
"THE COURT: You may be in a different position. You may be in jail.
"MR. CHAVEZ-REY: I realize that, sir. * * *"
Thereafter the court found him guilty of criminal contempt and entered the order which is appealed.
Appellant's first point is that the contempt committed by the appellant was an indirect criminal contempt and that the court could punish him for it only if the court followed the provisions of Rule 1.840, Florida Rules of Criminal Procedure, 33 F.S.A. We hold that the appellant was guilty of direct criminal contempt by his own admission and that the court had the inherent power to punish for this contempt by the imposition of the 60 days sentence. The direct contempt was the appellant's false testimony in 1965 that the appellee knew of the divorce. The 1965 divorce action and the present cause were both heard by the same judge. Appellant further urges under his first point that the action of the trial court did not follow due process of law because it violated the mandate of the Supreme Court of the United States in Bloom v. State, 391 U.S. 194, 88 S.Ct. 1477, 20 L.Ed.2d 522 (1968), and the holding in Sharp v. Sharp, Fla.App. 1968, 209 So.2d 245. We hold that the requirements as to procedure set forth in those two cases do not apply to the instant case because the sentence for the criminal contempt was such as to indicate that it was not a serious criminal contempt within the guidelines set out by the Supreme Court of the United States in Bloom. We further hold that the requirements set forth by the Second District Court of Appeal in Sharp are not applicable because the case before us involves a direct contempt, a contemptuous act committed in the presence of the court. Cf. McDaniel v. State, Fla.App. 1968, 213 So.2d 505 (opinion filed August 13, 1968). The procedural requirements for prosecuting a direct criminal contempt are set forth in Rule 1.830, Florida Rules of Criminal Procedure:
"A criminal contempt may be punished summarily if the court saw or heard the conduct constituting the contempt committed in the actual presence of the court. The judgment of guilt of contempt shall include a recital of those facts upon which the adjudication of guilt is based. Prior to the adjudication of guilt the judge shall inform the defendant of the accusation against him and inquire as to whether he has any cause to show why he should not be adjudged guilty of contempt by the court and sentenced therefor. The defendant shall be given the opportunity to present evidence of excusing or mitigating circumstances. The judgment shall be signed by the judge and entered of record. Sentence shall be pronounced in open court."
*599 We hold that the trial judge substantially complied with the requirements of that rule. The record reveals that prior to the adjudication of guilt, the judge informed the defendant of the nature of the charge against him. It is true that the appellant was still under the charge of a rule to show cause for failure to pay alimony and child support but the trial judge made it sufficiently clear that appellant was in trouble for the appellant's deception of the court in order to inform the defendant of the accusation against him. The trial judge fully inquired as to whether the appellant had any excuse and gave the appellant full opportunity to recite any mitigating circumstances.
Appellant's contention that the statute of limitations for the crime of perjury had run and therefore he could not be punished for contempt is unacceptable. One may be held in direct contempt of court for falsely testifying before the court even though the statute of limitations would bar a prosecution for perjury. Our holding is suggested by the reasoning of the Supreme Court of Utah in Tracy Loan & Trust Co. v. Openshaw Inv. Co., 102 Utah 509, 132 P.2d 388 (1942).
One of the defendants in Tracy had testified at trial that he was the beneficial owner of stock, the ownership of which was the subject matter of the controversy. In affirming the judgment that the defendant did own the stock, the Supreme Court of Utah considered testimony the defendant had given in prior divorce proceedings and alimony reduction hearings to the effect that he did not own the stock. Although no contempt proceedings had been brought against the defendant in the cause then before the Supreme Court of Utah, that Court declared:
"If a witness commits perjury, even though the statute of limitations bars prosecution for such offense by reason of lapse of time, a person who testifies falsely can be reached by contempt proceedings, which may in many instances have a more salutary effect than preventing a witness from finally telling the truth. If a party litigant comes into court and falsifies, such conduct should not be employed to prevent him from telling the truth in a later action where there has not been any reliance on such false testimony, particularly where a rule estopping him from telling the truth would operate to injure innocent persons and not merely punish the wrongdoer.
"C.R. Openshaw is not beyond the reach of the law, even if the statute of limitations has run against any perjury might have been committed in the divorce action." 132 P.2d at 391, 392.
Appellant's second point urges that the trial court was powerless to set aside the fraudulently obtained decree because no party moved to vacate the final decree pursuant to Rule 1.540(b), Florida Rules of Civil Procedure, 31 F.S.A. This contention is incorrect. Counsel for the appellee did move to vacate the divorce. Moreover, the appellant overlooks the fact that the decree was not only fraudulently procured but was admittedly void from the beginning. The record shows that the newspaper publication of notice of the divorce action to the appellee contains the admittedly false address, Guaras 779, Lima, Peru. The appellee had neither actual nor constructive notice of the divorce action pending against her. Therefore, the court had no jurisdiction over her, and the divorce decree was void. If the reason for the motion to vacate is that the judgment is void, then the motion may be made within a reasonable time. Rule 1.540(b). In the present case counsel for the appellee made his oral motion within a reasonable time, namely, as soon as he learned that his client had never been served properly. We hold that the court had the power under the circumstances of this case to set aside the void decree.
Affirmed.