Carl Bruce **WIESE**, Plaintiff and Appellant,

v.

Christine M. **WIESE**, Defendant and Respondent.

No. 18715.

Supreme Court of Utah.

March 7, 1985.

John T. Caine, Ogden, for plaintiff and appellant.

Stephen W. Farr, Ogden, for defendant and respondent.

HOWE, Justice:

Plaintiff Carl Bruce Wiese appeals from an order of the district court that he pay child support for his stepson.

■ Our standard of review in divorce proceedings allows us to disturb the action of the trial court only when the evidence clearly preponderates to the contrary or the trial court has abused its discretion or misapplied principles of law. *Lord v. Shaw*, Utah, 682 P.2d 853 (1984); *Fletcher v. Fletcher*, Utah, 615 P.2d 1218, 1222 (1980). Subject to those limitations, we are free to review both the facts and the law. *Openshaw v. Openshaw*, Utah, 639 P.2d 177, 178 (1981); *Christensen v. Christensen*, Utah, 628 P.2d 1297 (1981).

Defendant Christine M. Wiese was divorced from her first husband in January of 1973. She knew she was then pregnant, but she did not disclose that fact to the court. She had met the plaintiff about two weeks earlier. They married in August, 1973, shortly before her son was born to "give him a name" and to avoid the cost of adoption procedures. Although both knew that plaintiff was not the father of the boy, plaintiff allowed his name to be so shown on the birth certificate, and he treated the boy as his own during the marriage and supported him.

Plaintiff and defendant lived together for approximately 14 of the 36 months they were married. At the suggestion of the defendant, plaintiff took custody of her son when they were divorced in 1976 in a default proceeding. Plaintiff's attorney prepared the decree of divorce which reflected that the boy was "issue of the marriage" and "child of the parties." (We can only assume that they were prepared in this manner because plaintiff's attorney was not informed of the anomoly and had no reason to believe that the boy was not plaintiff's natural son; but the correctness of that assumption does not affect our holding.) Within three months after the divorce, however, defendant demanded the return of her son because plaintiff had left him in the care of plaintiff's parents while he was away in military training. Plaintiff complied and returned the three-year-old boy in November of 1976. He sent gifts and a savings bond to the boy for the following two Christmases. The parties did not make any child support arrangements, but plaintiff voluntarily sent money for the boy on an irregular basis until January, 1978. His last contact with the boy was a one-day visit in the summer of 1977 when the boy was four years old.

In an attempt to clarify the true nature of his relationship and obligation to the boy, plaintiff, in 1978, asked for modification of the divorce decree to reflect that he was not the father of the child. To accomplish this, plaintiff brought an independent common law action grounded in fraud as recognized by Rule 60(b) of the Utah Rules of Civil Procedure. Defendant was served with process, but failed to file any responsive pleadings or to appear at the hearing on the petition. The district court ordered that plaintiff was not obligated to pay child

support until such time as defendant petitioned for it, but held the paternity issue in abeyance.

Nearly two and a half years later, defendant caused to be served on plaintiff an order to show cause why he should not pay child support. This action was taken in the divorce proceeding under the court's continuing jurisdiction. Plaintiff answered the order to show cause by raising the issue of paternity and seeking a modification of the divorce decree to reflect that he was not the father of the child. The court consolidated plaintiff's independent action with the order to show cause and ordered that they be set for a trial on their merits.

The trial court found that plaintiff failed to prove any fraud in support of his independent action and declined to modify the decree on that basis. However, in the divorce action the court specifically found that plaintiff was not the father but ordered him to pay child support, holding that plaintiff was equitably estopped from escaping the duty of support. Plaintiff does not appeal the trial court's denying relief in the independent action. He contends, however, that the court erred in not modifying the decree to reflect that he was not the father and in finding that he was equitably estopped from denying liability for support.

There was no duty at common law for a stepparent to support a stepchild. The legislature of this state has imposed that duty on stepparents only during the duration of the marriage. U.C.A., 1953, § 78–45–4.1. The use of an equitable estoppel theory to impose support obligations upon a stepfather was first developed in *Clevenger v. Clevenger*, 189 Cal.App.2d 658, 11 Cal. Rptr. 707 (1961) (citing Restatement (First) of Contracts § 90 (1932)). The trial court's findings indicate that it relied on *Clevenger* in reaching its holding. This Court has never applied the *Clevenger* rule to estop a nonbiological "father" from denying paternity. In *Mace v. Webb*, Utah, 614 P.2d 647 (1980), we stated in dictum that "in appropriate cases, a support obligation may be imposed on the basis of estoppel or implied contract." But we expressed a caveat that "the use of an estoppel theory to impose a support obligation on a man who is not the biological father of the child involved must be applied with caution." *Id.* at 649.

We have held that a party asserting equitable estoppel must prove that he detrimentally relied on the actions or representations of the party to be estopped. *Morgan v. Board of State Lands*, Utah, 549 P.2d 695 (1976). The trial court found that the boy detrimentally relied on the plaintiff because the latter caused the preparation of the stipulation which was the foundation for the decree of divorce, which decree found that the boy was the "issue of the marriage" and "the minor child of the parties." This representation, the findings continue, placed the child in a "position where it would be substantially impossible to successfully pursue a claim against the biological father."

We cannot agree with the latter finding. No evidence was adduced that it would be "substantially impossible" for the boy to pursue a claim against his biological father. Indeed, the record is totally barren of any evidence that the defendant has ever even approached her first husband (who we assume is the biological father) on the subject of support. We concur with the New Jersey Supreme Court's recent holding that the party asserting equitable estoppel must carry the burden to show that the stepfather's actions have precluded the obtaining of support from the biological father. *Miller v. Miller*, 97 N.J. 154, 478 A.2d 351, 358–359 (1984). In a well-reasoned opinion, the New Jersey Court held that the party alleging equitable estoppel had the burden to prove that the stepfather's conduct established the three prerequisites to equitable estoppel: representation, reliance, and detriment. As to the detriment requirement, the Court held that there must be evidence that the child will suffer because his stepparent's representation or conduct causes him to be cut off from his noncustodial natural parent's support. By way of example, detrimental action by the stepparent might exist where

the custodial parent is unable to locate the other parent or for valid legal reasons is unable to obtain jurisdiction over him or her. The Court emphasized that the natural parent should always be considered the primary source for child support because society and its current laws assume that the natural parent will support his or her child. It concluded that before estoppel could be raised the stepparent "must take positive action interfering with the natural parent's support obligation to be bound." *Id.* 478 A.2d at 359.

It is true here that the plaintiff consented to be named as the father on the birth certificate and that he caused the decree of divorce between him and the defendant to reflect that the boy was issue of their marriage. However, that conduct in and of itself is insufficient to establish detriment. In the first place, the trial court made a specific finding that plaintiff was not the father of the boy and erred in not modifying the decree to reflect that finding. Secondly, no legal authority is cited for the proposition that plaintiff's representations to the 1976 divorce court preclude the boy, who was not a party to that action, from obtaining support from his biological father. Other jurisdictions have held that if a child is not a party to a previous action adjudging him the offspring of the parties, the child is not bound by that finding. *See L___ v. R___*, Mo.Ct.App., 518 S.W.2d 113 at 125 (1974) (and cases cited therein); *A.B. v. C.D.*, 150 Ind.App. 535, 277 N.E.2d 599 (1971); *Fuller v. Fuller*, D.C., 247 A.2d 767 (1968). The fact that the plaintiff treated the boy as his own and supported him is likewise insufficient grounds for imposing the duty of support. *Miller v. Miller, supra.*

We reverse the judgment and order of support entered against the plaintiff without prejudice to the defendant to again bring an order to show cause for support when her efforts to obtain support from the biological father have been concluded. Only at that time can it be determined whether equitable estoppel will lie against the plaintiff. No costs on appeal are awarded.

■ Defendant's brief on appeal requests an increase of the trial court's award of attorney fees. However, since she did not file a cross-appeal on this issue, we decline to address her request.

HALL, C.J., STEWART, J. and BALLIF, District Judge, concur.

DURHAM, Justice (dissenting):

The majority opinion analyzes this case in terms of equitable estoppel and reverses because "detriment" has not been shown. I believe that the appropriate theory to be applied is not equitable estoppel, but judicial estoppel and res judicata, and that the judgment of the lower court should be affirmed.

Plaintiff and defendant met and became friends just prior to defendant's divorce from her previous husband. On the day before defendant was to go to court in that divorce proceeding, she learned that she was pregnant. That evening she spoke with plaintiff and confided in him that she was pregnant and that she did not intend to tell the father of the child. Seven months later plaintiff and defendant were married, having decided to marry prior to the birth of the child. On August 31, 1973, the child was born and plaintiff, Carl Bruce Wiese, signed the birth certificate of the child, who was named Carl Justin Wiese.

In 1976 plaintiff brought a divorce action against defendant. In the complaint, which was signed and sworn *by plaintiff* (and not by his attorney), plaintiff alleged, "[T]here has been one child born as issue of said marriage, to-wit: CARL JUSTIN WIESE, born 8/31/73." Further, plaintiff alleged in that complaint, "[P]laintiff should be awarded the care, custody and control of the minor child of the parties...." A stipulation and agreement, drawn up by plaintiff and signed by both plaintiff and defendant, provided that plaintiff should be awarded a divorce and custody of the "minor child of the parties." The stipulation was accepted by the court, and a decree of divorce was entered in which plaintiff was

awarded custody of the child. Plaintiff then took the child to Arizona. When defendant learned that plaintiff had sent the child back to Utah to stay with plaintiff's parents, she insisted that the child live with her instead. The child has lived with defendant since that time.

In this action, plaintiff has sought to have the divorce decree "modified" to provide that he is not the father of the child and that he is, therefore, not responsible for the child's support. As a prerequisite, plaintiff must demonstrate that there is a substantial change of circumstances since the time of the previous order which is material to the modification he seeks. *See, e.g., Kessimakis v. Kessimakis*, Utah, 580 P.2d 1090, 1091 (1978). No such change of circumstances relating to paternity exists here. *See Campos v. Campos*, Utah, 523 P.2d 1235, 1236 (1974). All of the facts alleged in support of plaintiff's motion were fully known to him when he filed his complaint. That circumstance alone warrants affirming the trial judge's refusal to change the decree.

The majority opinion treats this case solely under the rubric of the "duty to support" issue. It relies on cases which limit the application of equitable estoppel in situations where a duty of support is sought to be imposed on a stepparent. In particular, the majority is persuaded by the reasoning in *Miller v. Miller*, 97 N.J. 154, 478 A.2d 351 (1984), that no duty should be imposed in this case. The instant case, however, is distinguishable from *Miller* on a number of grounds. In *Miller*, the stepparent, who never at any time asserted any claim to be the actual or legal father, married the children's mother when the children were six and nine years old. The children in *Miller* had had long-term contact with their natural father, who had supported them up until the time the stepfather insisted on taking over their support. Because it was possible to return to the previous support arrangement, the *Miller* court remanded the case to the trial court to determine whether the children had suffered detriment in relation to their future support. *Id.*, 478 A.2d at 359. In the instant case, there is no evidence that there has ever been any support provided by the natural father, nor is he legally obligated to provide such support, because all the enforceable legal documents establish that plaintiff is the father of and responsible for the child.

I do not believe, however, that the question of actual detriment to the child is the critical issue in this case. The determinative question, rather, should be whether plaintiff should be judicially estopped from relitigating an issue raised and ruled upon in the original divorce decree. Plaintiff alleged in his verified complaint that the child was his issue and, on the basis of that complaint, was awarded a divorce and a decree which granted him custody. A judgment was entered which established plaintiff as the father of the child. Having taken advantage of his sworn representation to the court in order to obtain a divorce decree and a custody award, plaintiff now seeks to overturn that judgment in order to avoid the responsibility of support that accompanies the right to seek custody. In my view, the entry of the earlier judgment precludes plaintiff from relitigating the paternity issue for two reasons. First, the application of the principle of judicial estoppel prevents plaintiff from seeking relief by contradicting his own sworn statement in a judicial proceeding.

[A] person may not, to the prejudice of another person deny any position taken in a prior judicial proceeding between the same persons or their privies involving the same subject-matter, if such prior position was successfully maintained.

*Tracy Loan & Trust Co. v. Openshaw Inv. Co.*, 102 Utah 509, 515, 132 P.2d 388, 390 (1942). In this case, defendant signed the divorce stipulation and agreement and, thereby, consented to the divorce and to the grant of custody of the child to plaintiff, all in reliance on the position taken by plaintiff in his pleadings respecting his fatherhood of the child. In a more recent New York case, the court similarly defined this type of estoppel:

The doctrine of judicial estoppel ... provides that where a party assumes a certain position in a legal proceeding and succeeds in maintaining that position, he may not thereafter, simply because his interests have changed, assume a contrary position, especially if it be to the prejudice of the adverse party in the original proceeding.

*Chemical Bank v. Aetna Insurance Co.,* 99 Misc.2d 803, 805, 417 N.Y.S.2d 382, 384 (N.Y.Supp.Ct.1979). This case does not involve specific prejudice to defendant or reliance by her on plaintiff's making of the earlier sworn statements, it being obvious she could not have relied on the truth of the statements. I believe, however, that the principle of judicial estoppel has a strong and independent public policy justification, namely, the need to uphold the sanctity of oaths and the integrity of the judicial process. Thus, the requirement of prejudice to an adverse party which is part of the doctrine of equitable estoppel need not be imposed in the case of judicial estoppel.

The second and even more compelling reason that plaintiff may not now seek to modify the paternity determination in the divorce decree is that that issue was settled in the decree and is res judicata. There are no newly discovered relevant facts which would justify reopening the issue of paternity, since the plaintiff knew at all times that he was not the natural father of the child. *See Kallas v. Kallas,* Utah, 614 P.2d 641, 643 (1980). The general rule in such cases is summarized as follows:

Specifically, in almost every case considering the effect, in subsequent proceedings between a husband and wife, of a finding or implication of paternity in a divorce or annulment decree, or in an incidental support or custody order, the courts have held or recognized that a husband and wife are concluded by the prior paternity determination.

Annot., 78 A.L.R.3d 846, 851 (1977 & Supp. 1984) (footnote omitted). This annotation goes on to state, "[A]djudication in a divorce or annulment action concerning the paternity of a child is res judicata as to the husband or wife in any subsequent action or proceeding." *Id.* at 853 (footnote omitted). Indeed, it appears that plaintiff was fully aware of the conclusive effect of the prior judgment when he brought this action, as evidenced by the fact that he brought the suit as an independent action grounded in fraud. The trial judge specifically found in his memorandum decision that there was no basis for plaintiff's claim of fraud. Based on that finding, which is clearly correct, plaintiff cannot attack the paternity determination. In two companion cases in Florida, *Johnson v. Johnson* and *Riggs v. Riggs,* 395 So.2d 640 (Fla.Dist.Ct. App.1981), the fathers of children born during marriage responded to petitions for enforcement of child support by challenging paternity. The trial court ordered the former wives and the children to submit to blood typing. The district court of appeals vacated the orders and said:

If a husband has doubts concerning the paternity of a child born during the marriage, he should raise and resolve that question during the dissolution proceedings. Here, the issue of each child's paternity was resolved in the final judgments of dissolution. Those judgments are res judicata inasmuch as they involved an identity of causes of action and parties and involved the same issue as the husbands now attempt to relitigate. Therefore, the final judgments bar any redetermination of the paternity of either child.

... To allow former husbands to come into court long after entry of final judgment and challenge the legitimacy of children born during their marriages would be chaotic at best.

*Id.* at 641 (citations omitted). In *Campos v. Campos,* Utah, 523 P.2d 1235 (1974), this Court affirmed the denial of a petition to modify a divorce decree based on claims of nonpaternity and said:

It should be noted that the defendant raised no issue of paternity at the time these proceedings were initiated, nor did the defendant make any such contention when he sought to have the decree mod-

ified so as to award to him the custody of Christian as well as the other child. It appears to us that the defendant is attempting in these proceedings for a modification to have this court review the decree of divorce originally entered after the time for appeal from that decree has long since expired.

*Id.* at 1236. In my opinion, the trial judge erred in even permitting evidence on the paternity issue in this case. I would, therefore, affirm his refusal to modify the decree except as to custody and support.

In addition to the foregoing, I believe that there are other, equitable, reasons to affirm the trial judge's imposition of a support obligation in this case. Plaintiff knew of defendant's pregnancy within hours of defendant's learning that she was pregnant and several months before he decided to marry her. He undertook that marriage and the imminent birth of her child with full knowledge that the child was not his. He then chose to sign the birth certificate, hold himself out as the child's legal and actual father, and give the child his own first and last names. Upon dissolution of the marriage, he chose to represent to a court of law that the child was his and to take advantage of his consequent right to have custody of the child. Plaintiff had numerous opportunities to avoid making a commitment to the child, but in each instance he chose to commit himself to continued obligation to the child, receiving in return rights and benefits as the child's legal father. Plaintiff continued to give the child gifts and to pay support for more than a year after he gave up custody. By the time plaintiff decided that he no longer wanted to be obligated to the child and brought a suit to reestablish paternity, the child was five years old. Under these circumstances, it is wholly inequitable to allow plaintiff to simply walk away from a commitment of this magnitude, voluntarily undertaken and obviously of past benefit to him. In *Clevenger v. Clevenger*, 189 Cal.

App.2d 658, 674, 11 Cal.Rptr. 707, 716 (1961), the court said:

The relationship of father and child is too sacred to be thrown off like an old coat, used and unwanted. We are dealing with the care and education of a child during his minority and with the obligation of the party who has assumed as a father to discharge it. The law is not so insensitive as to countenance the breach of an obligation in so vital and deep a relation, undertaken, partially fulfilled, and suddenly sundered.

The *Clevenger* court found that the facts as recorded in that case did not establish equitable estoppel because, unlike the instant case, there was insufficient evidence that the putative father represented to the child, expressly or impliedly, that he was the child's father. *See Clevenger*, 189 Cal. App.2d at 676, 11 Cal.Rptr. at 717–18.

In more recent cases, the California Court of Appeals has imposed a duty of support on putative fathers on the basis of estoppel. *In re Marriage of Johnson*, 88 Cal.App.3d 848, 152 Cal.Rptr. 121 (1979); *In re Marriage of Valle*, 53 Cal.App.3d 837, 126 Cal.Rptr. 38 (1975). As the majority opinion points out, this Court has stated that a duty of support could be appropriately imposed on putative fathers but must be imposed cautiously. *Mace v. Webb*, Utah, 614 P.2d 647, 649 (1980).[1] In cautioning against an overly broad application of estoppel in support cases, the Court was concerned that "[v]oluntary support of illegitimate children or stepchildren should not be discouraged" by predicating legal obligations thereon. *Id.* Certainly this is a valid concern, but it should not be allowed to negate other important values. In a case similar to this in Ohio, where a man, with full knowledge, married a woman who was pregnant with another man's child, the court found that the natural father *could not* be held liable for support. The court said:

---

**1.** In *Mace v. Webb*, the parties had never married and the putative father had never petitioned any court for relief on the basis that he was the child's actual father.

The possible harm is not merely the illegitimation of a heretofore legitimate child, but the disruption of the normal psychological and sociological relationship between father and child which is nurtured by support and association. The creation of an invitation to bring support actions against alleged biological fathers, perhaps many years after the fact, portends the possibility of "father-shopping," *i.e.*, seeking support from the most successful of possible candidates. These actions will not only present the problem of staleness of the evidence, but also the possibility of disrupting other established families by moral disparagement and suddenly increased financial responsibilities.

*Hall v. Rosen,* 50 Ohio St.2d 135, 140, 363 N.E.2d 725, 728 (1977). The situation in which a man marries a pregnant woman and knowingly assumes the responsibility of acting as the child's father from birth is qualitatively different from the typical stepparent situation where a person, previously unknown to the child, enters the family relationship and offers support to the stepchildren. In the former situation, there is a greater potential for psychological bonding and financial reliance since the parent/child relationship begins prior to birth. To allow the putative father to simply sever those ties at will is not only unfair but is also extremely destructive to the family system the putative father has himself voluntarily established. In essence, the act of marrying a pregnant woman is comparable to adoption. *See Hall,* 50 Ohio St.2d at 138, 363 N.E.2d at 727. "Thus, the husband has voluntarily assumed the burden of supporting the child." *Id.,* 50 Ohio St.2d at 139, 363 N.E.2d at 727.

The doctrines of judicial estoppel and res judicata require affirmance in this case, and the equities likewise demand that the trial court's order be upheld.

ZIMMERMAN, J., does not participate herein.