Carl B. MASTERS, Plaintiff
and Appellant,

v.

Mary Lee WORSLEY and the State of Utah By and Through the Department of Social Services, Defendants and Respondent.

No. 880510–CA.

Court of Appeals of Utah.

July 5, 1989.

David A. McPhie (argued), Hintze, Brown, Faust, Blakesley & McPhie, Salt Lake City, for plaintiff and appellant.

Penny Heal Trask (argued), Salt Lake City, for defendant and respondent, Mary Lee Worsley.

R. Paul Van Dam, State Atty. Gen., Dan R. Larsen, Asst. Atty. Gen., Salt Lake City, for defendant and respondent, Dept. of Social Services.

Before GARFF, GREENWOOD and JACKSON, JJ.

## OPINION

GREENWOOD, Judge:

Carl B. Masters appeals from the trial court's grant of summary judgment in favor of his former wife, Mary Lee Worsley. On appeal, Masters claims that the trial court erred in granting Worsley's motion for summary judgment because: 1) the trial court failed to issue a written order stating the basis for granting the summary judgment; and 2) Worsley was not entitled to summary judgment as a matter of law. We reverse and remand.

Masters and Worsley were divorced on August 6, 1982, after twenty-six years of marriage. Five children were born during the marriage. Worsley was awarded custody of the three minor children and Masters was ordered to pay child support. Masters suspected Worsley had been unfaithful to him during the marriage, and asked her in a deposition taken in the course of the divorce proceedings if she ever had had an intimate relationship with Bob Weston. Worsley denied such a relationship.

Bob Weston died in approximately December of 1983. In December of 1986, Bob Weston's wife, Pat Weston, gave Masters a copy of a letter and some pictures she had found in her husband's personal effects. The letter was written to "Bob," signed "Love Mary Lee," and intimated that Bob may have been the father of three of Worsley's children. The pictures were provocative photographs of Worsley. Masters filed a petition for modification of the divorce decree on the basis of fraud. The fraud cause of action was dismissed with prejudice by the trial court as being improperly included in the petition for modification. Masters subsequently filed a separate action against Worsley for fraud, alleging Worsley had lied in her deposition about her relationship with Bob Weston and the paternity of the three youngest children, and requesting HLA blood and tissue tests. Worsley filed a motion for summary judgment, claiming that she was entitled to summary judgment on the grounds of equitable estoppel, judicial estoppel, res judicata, equity and waiver. The court granted the motion without stating the grounds. This appeal followed.

## I. ORDER GRANTING SUMMARY JUDGMENT

■ We must first determine whether the trial court committed error in refusing

to give a written statement of the grounds for its order granting summary judgment. Utah R.Civ.P. 52(a) provides: "[t]he court shall, however, issue a brief written statement of the ground for its decision on all motions granted under Rules 12(b), 50(a) and (b), 56, and 59 when the motion is based on more than one ground." *See also Taylor v. Estate of Taylor*, 770 P.2d 163, 168 n. 5 (Utah Ct.App.1989). "Normally, failure to comply with Utah R.Civ.P. 52(a) would constitute reversible error." *Dover Elevator Co. v. Hill Mangum Invs.*, 766 P.2d 424, 426 (Utah Ct.App.1988). A brief written statement would inform the parties about the "mind of the court" and the analysis used to resolve the dispute. *Id.; see also Parks v. Zions First Nat'l Bank*, 673 P.2d 590, 601 (Utah 1983). In addition, a written statement would provide a basis on which the appellate court could review the judgment. *Dover Elevator*, 766 P.2d at 426.

As will be shown, we are not convinced that any of the theories propounded by Worsley justify the summary judgment. Therefore, in the interests of judicial economy, it is more appropriate to deal with those issues at this juncture, rather than remanding for full compliance with Rule 52(a). We note, however, that for an appellate court, a statement of grounds found by the trial court to justify summary judgment would be of great assistance, and in an appropriate case, failure to do so may justify remand to the trial court.

## II. SUMMARY JUDGMENT

Therefore, we examine whether Worsley was entitled to summary judgment as a matter of law. In reviewing a trial court's grant of summary judgment, we view the evidence in the light most favorable to the losing party. *Wheeler v. Mann*, 763 P.2d 758, 759 (Utah 1988). We will affirm the summary judgment only if the pleadings, affidavits and other submissions demonstrate that there is no genuine issue of material fact and the moving party is entitled to summary judgment as a matter of law. *Id.*

■ Masters claims he should be permitted to determine whether or not he is the biological father of Worsley's three youngest children and therefore responsible for their financial support. According to Utah Code Ann. § 30–1–17.2 (1976), "children born to the parties after the date of the marriage, shall be deemed the legitimate children of both of the parties for all purposes." However, legitimacy and paternity may involve two different determinations. Legitimacy addresses whether a child was conceived or born in wedlock, while paternity is a question of biological fatherhood. *Roods v. Roods*, 645 P.2d 640, 642 (Utah 1982). Biological fathers have the responsibility to support their children, whether born in or out of wedlock. *J.W.F. v. Schoolcraft*, 763 P.2d 1217, 1222 (Utah Ct.App.1988). Children born during the parties' marriage are presumed legitimate, but that presumption, if rebutted, means that the non-biological father has no financial responsibility toward the child. *Id.* Therefore, in this case, while the three children born during the parties' marriage are presumed legitimate, Masters may be able to rebut that presumption by proving he is not their biological father and thus establish that he has no financial responsibility towards the children.

Obviously, there are disputed facts in this case, i.e., did Worsley lie about her relationship with Weston and is Masters the biological father of the three children? We assume, for purposes of reviewing the summary judgment, that Masters is not the biological father and that Worsley was not truthful when she denied a relationship with Weston during her deposition.

### A. Fraud

■ Masters claims that the trial court erred in granting summary judgment for Worsley on his fraud claim, in which he alleged Worsley lied to him and to the court in the divorce proceedings about the paternity of the children. To establish fraud, a party must demonstrate that a party made a false representation concerning a presently existing material fact, which the representor either knew to be false or made recklessly without sufficient

knowledge, or omitted a material fact when there was a duty to disclose, for the purpose of inducing action on the part of the other party, with actual, justifiable reliance, resulting in damage to that other party. *Taylor v. Gasor, Inc.*, 607 P.2d 293, 294 (Utah 1980).

■ In this case, Worsley, in her deposition, denied having a relationship with Bob Weston. Several years later, Bob Weston's wife gave the pictures and letter to Masters, which suggest that Worsley and Bob Weston had had an intimate relationship for seventeen years and procreated three children. Construing the letter and pictures most favorably to Masters, Worsley made a false representation during her deposition and divorce proceedings regarding her relationship with Bob Weston and her children's parentage which she knew to be false and Masters relied on her representation to his detriment. Therefore, we find that there are facts alleged on the issue of fraud, which, if viewed most favorably to Masters, state a cause of action for fraud. As a result, the trial court could not grant summary judgment on the basis of failure to state a cause of action.

### B. Defenses

We must next examine whether Worsley's asserted defenses bar the fraud claim as a matter of law. In analyzing each of those defenses, we again view the facts in a light most favorable to the losing party, and determine if, under those facts, Worsley is entitled to summary judgment as a matter of law.

#### i. *Equitable Estoppel*

■ Worsley contends that even if Masters is not the three children's natural father, he is equitably estopped from denying liability for support of the three children. A party alleging equitable estoppel bears the burden of proving three elements: representation, reliance and detriment. *Weise v. Weise*, 699 P.2d 700, 702 (Utah 1985). Equitable estoppel is only invoked when the conduct and circumstances would otherwise perpetrate a fraud or unfair advan-

tage. *Kelly v. Richards*, 95 Utah 560, 83 P.2d 731, 734 (1938). In addition, general principles of equity state "he who seeks equity must do equity." *Horton v. Horton*, 695 P.2d 102, 107 (Utah 1984); *see also Rohr v. Rohr*, 709 P.2d 382, 384 (Utah 1985) ("equity refuses to lend its aid to a party whose conduct is inequitable"). Further, " 'the use of an estoppel theory to impose a support obligation on a man who is not the biological father of the child involved must be applied with caution.' " *Weise*, 699 P.2d at 702 (quoting *Mace v. Webb*, 614 P.2d 647, 649 (Utah 1980)). *See also NPA v. WBA*, 380 S.E.2d 178 (Va.Ct. App.1989) (husband who voluntarily supported child based on his mistaken belief he was the child's father was not barred by equitable estoppel).

Worsley asserts that under *Weise*, Masters is equitably estopped from terminating child support. We disagree. In *Weise*, defendant divorced her child's biological father while she was pregnant and married Weise prior to the child's birth. Although both defendant and Weise knew Weise was not the child's father, defendant allowed Weise to be named the father on the birth certificate, and Weise treated the child as his own during the marriage. Defendant and Weise divorced when the child was about three years old and the divorce decree stated that the child was issue of the marriage. Several years later, Weise requested modification of the decree to indicate that he was not the father of the child. He also brought an independent action for fraud. The trial court found that Weise was not the father but ordered him to pay child support on the ground that he was equitably estopped from avoiding payment of child support. On appeal, the Utah Supreme Court reversed, holding that defendant failed to demonstrate the third element of equitable estoppel, detriment. The court noted that Weise's conduct was insufficient to establish detriment and Weise's treatment of the child as his own was insufficient grounds for imposing a duty of support. The supreme court also stated that the mother could again bring an action for support when her efforts to obtain sup-

port from the biological father had concluded unsuccessfully.

Worsley asserts that the representation element of equitable estoppel is met in this case, because Masters is identified as the children's father on the birth certificates, supported them during their lives, and continued to exercise his role as a father. However, unlike Weise, Masters did not *know* that he was not the minor childrens' father. Equitable estoppel may be invoked only to aid a party who, without fault of his or her own, was "deluded into a course of action by the wrong or neglect of another." *Morgan v. Board of State Lands*, 549 P.2d 695, 697 (Utah 1976). Viewing the facts in the light most favorable to Masters, Worsley falsely led Masters to believe that he was the children's biological father. Worsley, not Masters, acted inequitably in leading the children and Masters to believe that Masters was their biological father. Thus, under the facts before us, Worsley has failed to establish that she is without fault or that Masters acted wrongfully or negligently in his representations. Therefore, summary judgment on the basis of equitable estoppel is not proper.

#### ii. *Waiver*

Worsley also claims that Masters could have requested blood tests in the divorce proceedings, and because he failed to do so, he has waived the issue of paternity. Worsley has cited no cases in support of her waiver argument. We note, however, that waiver requires that there be an "existing right, benefit, or advantage; knowledge of its existence; and an intention to relinquish it." *B.R. Woodward Mktg., Inc. v. Collins Food Serv., Inc.*, 754 P.2d 99, 101 (Utah Ct.App.1988). Worsley has not presented us with any facts which would support a finding that Masters knowingly and intentionally waived his right to tests to determine paternity. Therefore, waiver does not support the summary judgment.

#### iii. *Res Judicata*

Worsley's third defense is that Masters's claim for fraud is barred by res judicata. She contends that because Masters's claim for fraud was originally included as a cause of action in his petition for modification of the divorce decree and that claim was dismissed with prejudice, Masters is precluded from bringing an independent cause of action for fraud. She further claims application of res judicata because the claim was not raised in the original divorce proceeding.

Res judicata has two branches: claim preclusion and issue preclusion. *Copper State Thrift and Loan v. Bruno*, 735 P.2d 387, 389 (Utah Ct.App.1987). Claim preclusion prevents relitigation of claims that have been fully litigated between the same parties, and also precludes claims which "could and should have been litigated in the prior action, but were not raised." *Id.* Issue preclusion, or collateral estoppel, applies when the issues have been litigated in the context of a different cause of action. *Id.* In order for issue preclusion to apply, the issue in the first case must have been competently, fully and fairly litigated. *Id.*

"Actionable torts between married persons should not be litigated in a divorce proceeding." *Lord v. Shaw*, 665 P.2d 1288, 1291 (Utah 1983). Thus, the trial court correctly dismissed the fraud claim as being improperly raised in the petition for modification of the divorce decree and did not reach the merits of the claim. Claim preclusion does not bar Masters's fraud claim because the issues have not been fully litigated in either the original divorce nor the petition for modification proceedings. Also, Masters's claim of nonpaternity could not have been tried in the divorce because he had no knowledge of the alleged facts supporting his claim. Therefore, res judicata does not justify the trial court's grant of summary judgment for Worsley.

#### iv. *Judicial Estoppel*

Finally, Worsley asserts that the doctrine of judicial estoppel bars Masters from litigating the paternity issue. According to Worsley, Masters cannot contend that he is not the children's biological father because in a prior judicial proceed-

ing, the divorce proceeding, the court found Masters to be the father.

In *Tracy Loan & Trust Co. v. Openshaw Inv. Co.*, 102 Utah 509, 132 P.2d 388, 390 (1942), the Utah Supreme Court said that a party invoking judicial estoppel must show that he or she has done something or omitted to do something in reliance on the other party's testimony in the earlier proceeding, and will be prejudiced if the facts are different from those upon which he or she relied. *Id.* However, "there is no estoppel where there was no reliance and the parties had equal knowledge of the facts." *Id.* 132 P.2d at 390–91. However, in *Richards v. Hodson*, 26 Utah 2d 113, 485 P.2d 1044, 1046 (1971), the court clarified that the doctrine was really akin to collateral estoppel and applied only to issues actually litigated, not those which could have been determined. The purpose of judicial estoppel is to protect the integrity of the judicial process from conduct such as a knowing misrepresentation or a fraud on the court. *Total Petroleum, Inc. v. Davis*, 822 F.2d 734, 737 n. 6 (8th Cir.1987).

In the original divorce proceeding, the trial court found that Masters was the father of the parties' minor children. However, at the time of the original divorce proceeding, Masters had no knowledge, only suspicion, that he was not the father of the three minor children. Masters's belief that he was the children's father was reinforced when Worsley denied having had an intimate relationship with Bob Weston. Thus, at the time of the original proceeding, Masters did not knowingly misrepresent his paternity to the court. In fact, even at present, Masters does not know whether he is the father of those three children. In addition, because Worsley obviously had superior knowledge regarding the paternity of the children, we reject her claim that she has relied on his representation to her or the children's detriment. Accepting Masters's assertions as true, if the children have been prejudiced, Worsley is the responsible party. Therefore, we find no basis for invoking the doctrine of judicial estoppel in this case.

The trial court erred in granting Worsley's motion for summary judgment. We reverse and remand for proceedings in accordance with this opinion.

GARFF and JACKSON, JJ., concur.