2005 UT App 307

## 3D CONSTRUCTION AND DEVELOPMENT, L.L.C., Plaintiff and Appellant,

v.

## OLD STANDARD LIFE INSURANCE COMPANY; OCWEN Federal Savings Bank, FSB; and Paxton R. Guymon, as successor trustee, Defendants and Appellees.

## Old Standard Life Insurance Company, Counterclaim Plaintiff and Appellee,

v.

## 3D Construction and Development, L.L.C.; James Y. Dixon; and Ronald K. Dixon, Counterclaim Defendants and Appellant.

No. 20040250–CA.

Court of Appeals of Utah.

June 30, 2005.

---

Keith M. Backman and Jack C. Helgesen, Helgesen Waterfall & Jones, Ogden, for Appellant.

Blake D. Miller and Paxton R. Guymon, Miller Magleby & Guyon PC, Salt Lake City, for Appellees.

Before Judges BILLINGS, GREENWOOD, and JACKSON.

1. Old Standard Life Insurance Co. (Old Standard); Ocwen Federal Savings Bank, FSB (Ocwen); and Paxton R. Guymon (Guymon).

2. "When reviewing a grant of summary judgment, we view the facts and all reasonable infer-

## OPINION

GREENWOOD, Judge:

¶ 1 Plaintiff 3D Construction and Development, L.L.C. appeals the trial court's grant of Defendants'[1] motion for summary judgment. Specifically, Plaintiff argues that the trial court erred by concluding that the doctrines of judicial estoppel and issue preclusion barred Plaintiff's action. We reverse and remand.

## BACKGROUND[2]

¶ 2 In October 2001, Old Standard loaned Plaintiff $3,905,000 in exchange for a promissory note (the Note) secured by a deed of trust on several of Plaintiff's real properties in Box Elder County, Utah. The Note provided that Old Standard was to receive a "profit participation" amount, based on how quickly Plaintiff repaid the Note. For example, if Plaintiff repaid the Note on or before January 31, 2002, Old Standard would be entitled to a profit participation of $250,000; from February 1, 2002, through April 30, 2002, $1,000,000; and $2,000,000 if Plaintiff paid off the Note thereafter. Additionally, the Note provided that should Plaintiff default, Plaintiff would be required to pay a profit participation of $2,000,000.

¶ 3 Plaintiff arranged to pay off the Note in January 2002, and contacted Old Standard in December 2001, to obtain the proper balance due. However, Old Standard did not respond to Plaintiff's inquiries until mid-January 2002. Furthermore, when Old Standard did reply, through its agent Ocwen, it erroneously contended that Plaintiff was in default, and therefore, owed the entire $2,000,000 profit participation amount. Indeed, Old Standard later admitted that it and Ocwen had erroneously imposed the $2,000,000 default profit participation amount. Nevertheless, when subsequently asked to provide the proper payoff amount, Ocwen again included the $2,000,000 profit participation amount, and further, informed

ences drawn therefrom in the light most favorable to the nonmoving party." *Carrier v. Salt Lake County*, 2004 UT 98, ¶ 3, 104 P.3d 1208. Accordingly, the facts are so presented.

Plaintiff's title company that the Note was in default.

¶4 In April 2002, Old Standard appointed Guymon as successor trustee. Guymon thereafter began foreclosure proceedings against Plaintiff, scheduling the sale of Plaintiff's Box Elder County property for September 27, 2002. However, to prevent Guymon's scheduled sale, on September 25, 2002, Plaintiff voluntarily filed for Chapter 7 bankruptcy. Along with the bankruptcy petition, Plaintiff also filed the required schedules. In the schedules, Plaintiff listed, as its sole creditor, Old Standard, with a debt owed of $6,500,000, secured by property worth $7,000,000. However, Plaintiff did not mark the box indicating that the $6,500,000 debt was "disputed."

¶5 As a result of Plaintiff filing for bankruptcy, the automatic stay of 11 United States Code section 362 prevented further action on the foreclosure proceeding. *See* 11 U.S.C.A. § 362 (2004).[3] Thereafter, Old Standard moved for relief from the automatic stay. However, because Plaintiff intended that the bankruptcy petition would ultimately be dismissed notwithstanding Old Standard's motion, Plaintiff did not respond to Old Standard's motion. Accordingly, the bankruptcy court granted Old Standard's motion, relieving it from the automatic stay.

¶6 Subsequently, Guymon again scheduled a trustee's sale, this time for January 3, 2003. Once again Plaintiff stymied the sale, this time by filing a complaint, challenging the profit participation amount, accompanied by a motion for a preliminary injunction. After a hearing, the trial court denied Plaintiff's motion for a preliminary injunction.

¶7 Defendants then filed a motion for partial summary judgment, claiming that, as a result of the prior bankruptcy action, Plaintiff's claims were barred by (1) judicial estoppel, (2) claim preclusion, and (3) issue preclusion. After a hearing, the trial court granted Defendants' motion, concluding that Plaintiff's action was barred by judicial estoppel

and issue preclusion.[4] The trial court also certified the matter as final under Utah Rule of Civil Procedure 54(b). Plaintiff appeals.

## ISSUE AND STANDARD OF REVIEW

¶8 Plaintiff argues that the trial court erred by granting Defendants' motion for summary judgment. Specifically, Plaintiff argues that the legal doctrines of judicial estoppel and issue preclusion do not forestall its action contesting the amount owed under the Note.

¶9 We review a trial court's grant of a motion for summary judgment for correctness, affording no deference to the trial court. *See Ford v. American Express Fin. Advisors,* 2004 UT 70,¶21, 98 P.3d 15. A party is entitled to summary judgment if there is no genuine issue of material fact and "the moving party is entitled to a judgment as a matter of law." Utah R. Civ. P. 56(c). Additionally, "[f]or a moving party to be entitled to summary judgment, it must establish a right to judgment based on the applicable law as applied to the undisputed facts." *Smith v. Four Corners Med. Health Ctr., Inc.,* 2003 UT 23,¶24, 70 P.3d 904.

## ANALYSIS

### A. Judicial Estoppel

¶10 Plaintiff argues that the doctrine of judicial estoppel is inapplicable in the instant case because the doctrine's elements are not satisfied. Defendants counter that Plaintiff was under an affirmative duty to fully and accurately reflect its financial condition in its schedules, and that Plaintiff's failure to mark the $6,500,000 debt as "disputed" in the bankruptcy schedules estops Plaintiff from thereafter contesting the debt amount.

¶11 "Under judicial estoppel, 'a person may not, to the prejudice of another person, deny any position taken in a prior judicial proceeding between the same persons or their privies involving the same sub-

---

3. Because 11 United States Code section 362 has not been amended recently, for ease of reference we cite to the most recent version of the statute. *See* 11 U.S.C.A. § 362 (2004).

4. As for claim preclusion, the parties and the trial court concurred that the doctrine did not apply to this case.

ject matter, if such prior position was successfully maintained.' " *Nebeker v. State Tax Comm'n,* 2001 UT 74,¶ 26, 34 P.3d 180 (quoting *Tracy Loan & Trust Co. v. Openshaw Inv. Co.,* 102 Utah 509, 132 P.2d 388, 390 (1942)). The purpose behind judicial estoppel is to discourage machinations by the parties that subvert the integrity of the judicial system. *See Stichting Mayflower Mt. Fonds v. Jordanelle Special Serv. Dist.,* 2001 UT App 257,¶ 25, 47 P.3d 86 (" 'This doctrine prevents parties from playing "fast and loose" with the court or blowing "hot and cold" during the course of litigation.' " (Thorne, J., dissenting) (quoting *Roxas v. Marcos,* 89 Hawai'i 91, 969 P.2d 1209, 1242 (1998) (citation omitted)) (additional quotations omitted)).

¶ 12 We do not believe, however, that this policy is furthered by imposing judicial estoppel in instances where the party's prior position was based on mere mistake or inadvertence and consists of only a failure to check a small box rather than an affirmative representation. *See New Hampshire v. Maine,* 532 U.S. 742, 753, 121 S.Ct. 1808, 149 L.Ed.2d 968 (2001) ("We do not question that it may be appropriate to resist application of judicial estoppel 'when a party's prior position was based on inadvertence or mistake.' " (citation omitted)). Indeed, requiring a showing of bad faith by the party against whom judicial estoppel is sought is a widely-accepted view. *See, e.g., Whiting v. Krassner,* 391 F.3d 540, 544 (3d Cir.2004) (noting bad faith is "an essential requirement for the application of judicial estoppel"); *Eubanks v. CBSK Fin. Group, Inc.,* 385 F.3d 894, 899 (6th Cir.2004) (restating "evidence of an inadvertent omission of a claim in a previous bankruptcy proceeding is a reasonable and appropriate factor to consider when analyzing judicial estoppel's applicability"); *Johnson v. Oregon,* 141 F.3d 1361, 1369 (9th Cir. 1998) ("If incompatible positions are based not on chicanery, but only on inadvertence or mistake, judicial estoppel does not apply."); *see also* The Honorable William Houston Brown, Lundy Carpenter & Donna T. Snow, *Debtors' Counsel Beware: Use of the Doctrine of Judicial Estoppel in Nonbankruptcy Forums,* 75 Am. Bankr.L.J. 197, 225 (2001) (summarizing the circuits' different ap-

proaches toward intent as an element of judicial estoppel originating from prior bankruptcy proceedings).

¶ 13 Moreover, the fact that the Tenth Circuit does not recognize judicial estoppel undercuts Defendants' reliance on the doctrine in this case. *See United States v. 49.01 Acres of Land, More or Less, Situate in Osage County, Okla.,* 802 F.2d 387, 390 (10th Cir.1986) (stating " 'even in the case of false statements ... public policy can be vindicated ... more practically and fairly ... than through suppression of truth in the future.' " (citation omitted)). As a result, had Plaintiff's action been appealed to the U.S. District Court for the District of Utah, that court, bound by the rulings of the Tenth Circuit, could not have judicially estopped Plaintiff's dispute of the $2,000,000 profit participation amount based on Plaintiff's representations to the bankruptcy court.

¶ 14 Additionally, while Plaintiff's acknowledgment that it knew its bankruptcy filing would ultimately be dismissed suggests that Plaintiff filed its bankruptcy petition in order to stall Guymon's trustee sale of Plaintiff's Box Elder County real property, this does not equate to an intentional subversion of the judiciary. *See De Leon v. Comcar Indus., Inc.,* 321 F.3d 1289, 1292 (11th Cir.2003) (inferring bankruptcy debtor's "intent 'to make a mockery of the judicial system' " from his knowledge of a claim *and motive to conceal it* (citation omitted)).

▬ ¶ 15 Moreover, judicial estoppel is inappropriate where the party against whom judicial estoppel is sought did not successfully maintain the inconsistent position in the prior proceedings. *See Stevensen v. Goodson,* 924 P.2d 339, 353 (Utah 1996) (explaining "the rule followed in Utah requires that the party seeking judicial relief must have prevailed upon its statement in the earlier proceeding."). In the case before us, Plaintiff's voluntary bankruptcy petition was dismissed, and therefore, its contention was not successfully maintained.

¶ 16 Accordingly, we hold that Plaintiff's inadvertent failure to check the box on the bankruptcy schedules indicating the debt was

in dispute is insufficient to trigger the application of judicial estoppel.

### B. Issue Preclusion

■ ¶ 17 Plaintiff also argues that its failure to respond to Old Standard's motion for relief from the automatic stay does not justify the trial court's application of issue preclusion to Plaintiff's dispute of the debt amount.

■ ¶ 18 "[I]ssue preclusion, also referred to as collateral estoppel, prevents parties or their privies from relitigating issues which were once adjudicated on the merits and have resulted in a final judgment." *Brigham Young Univ. v. Tremco Consultants, Inc.*, 2005 UT 19,¶ 27, 110 P.3d 678 (quotations and citation omitted).

> The four requirements of issue preclusion are as follows: [1] The party against whom issue preclusion is asserted must have been a party to or in privity with a party to the prior adjudication; [2] the issue decided in the prior adjudication must be identical to the one presented in the instant action; [3] the issue in the first action must have been completely, fully, and fairly litigated; and [4] the first suit must have resulted in a final judgment on the merits.

*Id.* (alterations in original) (quotations and citations omitted).

¶ 19 The parties do not dispute that all the elements of issue preclusion are met here, save element three—"the issue in the first action" was "completely, fully, and fairly litigated."[5] *Id.* Plaintiff contends that this element requires an actual trial or its equivalent. Defendants, on the other hand, assert that this element is met if the party against whom issue preclusion is sought had adequate notice and an opportunity to litigate the issue. While the completely, fully, and fairly litigated element was not at issue in *Brigham Young University*, Utah's caselaw supports Defendant's view.

■ ¶ 20 In *Copper State Thrift & Loan v. Bruno*, 735 P.2d 387 (Utah Ct.App.1987), this court stated that the "competently, fully, and fairly litigated" element of issue preclusion stemmed "from fundamental due process and requires that litigants have their day in court." *Id.* at 391. "For purposes of due process, the parties must receive notice reasonably calculated, under all the circumstances, to apprise them of the pendency of the action and afford them an opportunity to present their objections." *Id.; see also In re Schultz*, 250 B.R. 22, 34–35 (Bankr.E.D.N.Y. 2000) (declining to apply issue preclusion where party "had no *opportunity* to be heard" (emphasis added)); *Buckner v. Kennard*, 2004 UT 78,¶ 21, 99 P.3d 842 (noting the more the parties had "the *opportunity* to present evidence and argument in a manner substantially similar to that provided in a judicial proceeding," the more likely "that a court will find that the issues were 'fully and fairly litigated' " (emphasis added) (citation omitted)); *Macris & Assocs. v. Neways, Inc.*, 2000 UT 93,¶ 44, 16 P.3d 1214 (noting the parties must have "had a full and fair *opportunity* to litigate the issue" for issue preclusion to apply (emphasis added)); *Career Serv. Review Bd. v. Utah Dep't of Corr.*, 942 P.2d 933, 939 (Utah 1997) ("Furthermore, our case law does not require either a motion or a hearing for full and fair litigation but says only that 'the parties must receive notice, reasonably calculated, under all the circumstances, to apprise them of the pendency of the action and afford them an *opportunity* to present their objections.' " (emphasis added) (citations omitted)).

■ ¶ 21 However, "[a]pplication of the doctrine of collateral estoppel may be unwarranted in circumstances where its purposes would not be served." *Buckner v. Kennard*, 2004 UT 78 at ¶ 14, 99 P.3d 842. "These purposes include: (1) preserving the integrity of the judicial system by preventing in-

---

**5.** This element appears both as *"completely,* fully, and fairly litigated," *Brigham Young Univ. v. Tremco Consultants, Inc.*, 2005 UT 19,¶ 27, 110 P.3d 678 (emphasis added), and as *"competently,* fully, and fairly litigated," *Copper State Thrift & Loan v. Bruno*, 735 P.2d 387, 391 (Utah Ct.App. 1987) (emphasis added). While used inter-

changeably in many Utah cases, we recite the element as "completely, fully, and fairly litigated," as it was the formulation employed by the Utah Supreme Court in its most recent issue preclusion opinion. *Brigham Young Univ.*, 2005 UT 19 at ¶ 27.

consistent judicial outcomes; (2) promoting judicial economy by preventing previously litigated issues from being relitigated; and (3) protecting litigants from harassment by vexatious litigation." *Id.*

¶ 22 "Moreover, collateral estoppel can yield an unjust outcome if applied without reasonable consideration and due care." *Id.* at ¶ 15. "Courts, then, must carefully consider whether granting preclusive effect to a prior decision is appropriate." *Id.* "Collateral estoppel 'is not an inflexible, universally applicable principle[.] ... Policy considerations may limit its use where ... the underpinnings of the doctrine are outweighed by other factors.'" *Id.* (alterations in original) (quoting *Jackson v. City of Sacramento*, 117 Cal.App.3d 596, 172 Cal.Rptr. 826, 829 (1981)); *see also Parklane Hosiery Co. v. Shore*, 439 U.S. 322, 330, 99 S.Ct. 645, 58 L.Ed.2d 552 (1979) (indicating applying collateral estoppel may be unfair where, for example, a party had "little incentive to defend vigorously.").

¶ 23 There is, however, an additional consideration in this case, deriving from the nature of a motion in bankruptcy court to lift the automatic stay, as allowed by 11 United States Code section 362(d). *See* 11 U.S.C.A. § 362(d) (permitting, for instance, "relief from the stay" if "the debtor does not have an equity in" property of the bankruptcy estate and "such property is not necessary to an effective reorganization."). If granted, the motion allows a creditor to proceed in state court. In this case, Old Standard alleged in its motion that Plaintiff had no equity in the property securing the debt and sought to proceed with its foreclosure proceeding.

¶ 24 In *Grella v. Salem Five Cent Savings Bank*, 42 F.3d 26 (1st Cir.1994), reasoning that a motion for relief from an automatic stay was not an adjudication of the substantive merits of either the creditor's claim or any possible defenses or counterclaims, the court held that a bankruptcy court order granting relief from the stay did not bar, via issue preclusion, a subsequent counterclaim. *See id.* at 33, 35. "[A] motion for relief from stay is merely a summary proceeding of limited effect," and seeks "only to determine whether the party seeking relief has a colorable claim to property of the estate." *Id.* at

33. The proceeding is not intended to determine "the merits of the underlying substantive claims, defenses, or counterclaims." *Id.; see also National Westminster Bank, U.S.A. v. Ross*, 130 B.R. 656, 670 (S.D.N.Y.1991) (resolving issue preclusion did not apply to debtor's claims against creditor because those claims "could not properly have been raised and fully litigated in connection with, and as a defense to, the [creditor's] application to lift the automatic stay"); *In re Nasco, P.R., Inc.*, 117 B.R. 35, 38 (Bankr.D.P.R. 1990) (concluding lifting of automatic stay does not constitute issue preclusion of debtor's claims).

¶ 25 These cases, in combination with the implicit policy considerations of issue preclusion, persuade us that Plaintiff's failure to make a futile objection to Old Standard's motion for relief from the automatic stay does not warrant application of issue preclusion in this case.

## CONCLUSION

¶ 26 The trial court erroneously imposed the doctrine of judicial estoppel because, viewing the evidence "in the light most favorable to the nonmoving party," *Carrier v. Salt Lake County*, 2004 UT 98,¶ 3, 104 P.3d 1208, (1) Plaintiff lacked the requisite bad faith in failing to mark the box labeled "disputed" in Plaintiff's bankruptcy schedules and (2) Plaintiff did not successfully maintain its position before the bankruptcy court, as the voluntary bankruptcy petition was dismissed. Further, the trial court erred by applying issue preclusion because (1) the doctrine's purposes are not advanced by its application under this set of facts and (2) the bankruptcy court's proceedings determined only whether to lift the automatic stay and did not afford Plaintiff complete, full, and fair litigation of its claims.

¶ 27 Accordingly, we reverse and remand for action consistent with this opinion.

¶ 28 WE CONCUR: JUDITH M. BILLINGS, Presiding Judge, and NORMAN H. JACKSON, Judge.