2006 UT App 394

Jayson ORVIS, Plaintiff and Appellee,

v.

Jamis M. JOHNSON, Defendant and Appellant.

No. 20041122–CA.

Court of Appeals of Utah.

Sept. 28, 2006.

Rehearing Denied Nov. 1, 2006.

Jamis Johnson, Salt Lake City, Appellant Pro Se.

Peggy A. Tomsic, Tomsic & Peck LLC, Salt Lake City, for Appellee.

Before Judges BENCH, GREENWOOD, and ORME.

OPINION

GREENWOOD, Associate Presiding Judge:

¶ 1 Jamis M. Johnson appeals the trial court's grant of summary judgment in favor of Jayson Orvis. Johnson maintains that the court misapplied the judicial estoppel doctrine and that genuine issues of material fact preclude summary judgment. We affirm.

## BACKGROUND

¶ 2 In reviewing a grant of summary judgment, "we view the facts and all reasonable inferences drawn therefrom in the light most favorable to the nonmoving party." *3D Constr. & Dev., L.L.C. v. Old Standard Life Ins. Co.*, 2005 UT App 307, ¶ 1 n. 2, 117 P.3d 1082 (quotations and citation omitted). We present the facts accordingly.

¶ 3 In September 1995, the Small Business Administration (SBA) filed an action against Johnson in federal district court in an unrelated matter. A $260,000 judgment was entered against Johnson. Subsequently, the SBA took Johnson's deposition during post-judgment proceedings in an attempt to satisfy its judgment by identifying Johnson's assets. At that time, Johnson was a licensed attorney in Utah and had practiced law for a number of years.[1] During his deposition, Johnson testified under oath that he had no interest in any partnerships or limited liability companies. In particular, he responded "no" to the questions, "Do you have any interest in any partnership?" and "Any interest in any limited liability companies?" Johnson also testified that he had no other assets upon which the SBA could execute. As a result, the SBA was unable to collect its judgment, and it thereafter assigned the judgment to All Star Financial, which in turn assigned it to Orvis on August 11, 2001.

¶ 4 Johnson claims to have had a partnership with Orvis in several credit repair businesses. In July 2001, Johnson suspected Orvis of embezzlement and fraud and demanded an accounting from Orvis. On August 28, 2001, Orvis filed an action for declaratory judgment proclaiming that he did not have a partnership with Johnson and further that Johnson had no right, claim, or interest in any of Orvis's businesses. Johnson counterclaimed for an accounting on the basis of his purported partnerships with Orvis. Johnson also filed a third-party complaint against three other parties on the same basis. Two of the third parties filed a motion for summary judgment, which the trial court granted, ruling that Johnson was judicially estopped from asserting that he was a partner in Orvis's businesses. Johnson did not appeal that judgment.

¶ 5 Orvis filed a motion for summary judgment on the ground that Johnson was judicially estopped from claiming partnership interests with Orvis. Deon Steckling, the remaining third party, joined Orvis in the motion. In November 2004, the trial court, citing Johnson's deposition testimony in the post-judgment SBA proceedings, granted summary judgment to Orvis under the doctrine of judicial estoppel. The trial court entered a declaratory judgment that Johnson had no right, claim, or interest in any of Orvis's businesses. The trial court also dismissed with prejudice Johnson's third-party complaint against Steckling. Johnson appeals.[2]

## ISSUES AND STANDARDS OF REVIEW

¶ 6 On appeal, Johnson contends that the trial court erred when it imposed the doctrine of judicial estoppel and granted summary judgment to Orvis, declaring that Johnson had no interest in any "business, enterprise or entity, relating to credit repair, in which Orvis has any ownership interest." "Summary judgment is appropriate only upon a showing 'that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.'" *Waddoups v. Amalgamated Sugar Co.*, 2002 UT 69, ¶ 21, 54 P.3d 1054 (quoting Utah R. Civ. P. 56(c)). We review a grant of summary judgment for correctness, with no deference to the trial court.[3] *See id.*

---

1. Johnson was later disbarred in unrelated proceedings.

2. In his appellate briefs, Johnson does not seek reversal of the summary judgment in favor of Steckling. Orvis's brief states that Orvis is also filing on behalf of Steckling, if necessary. For the sake of clarity, we affirm Steckling's summary judgment against Johnson.

3. Orvis notes that other appellate courts have applied an abuse of discretion standard of review to cases of judicial estoppel, even when presented in the context of a summary judgment. *See, e.g., Stallings v. Hussmann Corp.*, 447 F.3d 1041, 1046–47 (8th Cir.2006); *Alternative Sys. Concepts, Inc. v. Synopsys, Inc.*, 374 F.3d 23, 30–32 (1st Cir.2004); *De Leon v. Comcar Indus., Inc.*, 321 F.3d 1289, 1291 (11th Cir.2003); *Hamilton v. State Farm Fire & Cas. Co.*, 270 F.3d 778, 782

¶7 Johnson also contends that the trial court demonstrated bias toward him. We review an allegation of judicial bias for correctness as a question of law. *See State v. Tueller*, 2001 UT App 317, ¶7, 37 P.3d 1180.

## ANALYSIS

### I. Summary Judgment Based on Judicial Estoppel

¶8 Johnson argues that the trial court erroneously applied the judicial estoppel doctrine in its grant of summary judgment to Orvis. He also argues that genuine issues of material fact preclude summary judgment.

¶9 "[J]udicial estoppel is the doctrine which 'prevents a party from seeking judicial relief by offering statements inconsistent with its own sworn statement in a prior judicial proceeding.'" *Jones, Waldo, Holbrook & McDonough v. Dawson*, 923 P.2d 1366, 1371 (Utah 1996) (quoting *Salt Lake City v. Silver Fork Pipeline Corp.*, 913 P.2d 731, 734 (Utah 1995)). "'The purpose of judicial estoppel is to uphold the sanctity of oaths, thereby safeguarding the integrity of the judicial process from conduct such as knowing misrepresentations or fraud on the court.'" *Id.* (quoting *Silver Fork*, 913 P.2d at 734).

¶10 First, Johnson maintains that his sworn statement from the post-judgment SBA proceedings presents a genuine issue of material fact. He contends that the trial court failed to consider the actual meaning of his testimony when it interpreted only a truncated version of his response. Even though he answered "no" to the question about whether he had interest in a partnership, he continued his response as follows:

> Often I'll have a joint endeavor with somebody, but I don't have a partnership or set up a partnership or an L.L.C. You know, if I get a deal I say, [h]ey, do you want to do this deal together? We'll go up to Summit County and buy a lot.

¶11 Johnson asserts that he did not think the question referred to his partnerships with Orvis, but instead referred specifically to real estate partnerships. However, Johnson failed to present any specific facts in the record that support this view. Because, as the nonmoving party, Johnson must submit more than conclusory or speculative assertions, we fail to see how his deposition statements can be interpreted as anything but a denial of interest in any type of partnership. *See Waddoups v. Amalgamated Sugar Co.*, 2002 UT 69, ¶31, 54 P.3d 1054 ("The nonmoving party must submit more than just conclusory assertions that an issue of material fact exists to establish a genuine issue.").

¶12 Further, the trial court considered the fact that Johnson was a licensed attorney at the time of the deposition and thus understood that the purpose of the deposition was to determine if he had assets that could be used to satisfy the SBA judgment against him. On review of these facts and the actual deposition transcript, there is no lack of clarity in Johnson's deposition testimony.

¶13 Second, Johnson contends that the trial court misapplied the judicial estoppel doctrine by not considering all of its essential elements. He further maintains that genuine issues of material fact within each element preclude summary judgment under the judicial estoppel doctrine.

¶14 In *Tracy Loan & Trust Co. v. Openshaw Investment Co.*, 102 Utah 509, 132 P.2d 388 (1942), the supreme court identified four elements a party seeking to invoke the judicial estoppel doctrine must show: (1) the prior and subsequent judicial proceedings involve the same parties or their privies; (2) the prior and subsequent judicial proceedings involve the same subject matter; (3) the party opposing judicial estoppel seeks to

(9th Cir.2001); *Ahrens v. Perot Sys. Corp.*, 205 F.3d 831, 833 (5th Cir.2000). The rationale for applying this standard is that "'judicial estoppel is an equitable doctrine invoked by a court at its discretion.'" *Alternative Sys.*, 374 F.3d at 30–31 (quoting *New Hampshire v. Maine*, 532 U.S. 742, 750, 121 S.Ct. 1808, 149 L.Ed.2d 968 (2001) (internal quotations and citation omitted)). Utah's appellate courts have not addressed that issue of standard of review and we find no need to consider its application in this case. Such consideration may, however, be appropriate in a different case.

deny a position he or she took in the prior judicial proceeding; and (4) the party seeking judicial estoppel in the subsequent judicial proceeding must have "relied on the former testimony." [4] *Id.* at 390.

¶ 15 More recently, this court identified a fifth requirement for a party seeking to invoke the judicial estoppel doctrine—the party against whom judicial estoppel is sought must have exhibited bad faith. *See 3D Constr. & Dev., L.L.C. v. Old Standard Life Ins. Co.*, 2005 UT App 307, ¶ 12, 117 P.3d 1082 (explaining that the purpose of the judicial estoppel doctrine is not advanced when imposed "in instances where the party's prior position was based on mere mistake or inadvertence." [5] (citing *New Hampshire v. Maine*, 532 U.S. 742, 753, 121 S.Ct. 1808, 149 L.Ed.2d 968 (2001))). Put differently, the purpose of the judicial estoppel doctrine "is not served ... where there is no evidence

that the party against whom judicial estoppel is sought *knowingly misrepresented* any facts in the prior proceeding and where the party seeking to invoke judicial estoppel had equal or better access to the relevant facts." *Salt Lake City v. Silver Fork Pipeline Corp.*, 913 P.2d 731, 734 (Utah 1995) (emphasis added); *see also Jones, Waldo, Holbrook & McDonough v. Dawson*, 923 P.2d 1366, 1371 (Utah 1996) (holding that if the party making a statement in a prior proceeding did not have access to relevant facts, then he could not have knowingly misrepresented the facts).[6]

¶ 16 As the moving party, Orvis had the burden of presenting evidence to demonstrate that no genuine issues of material fact existed and that he was entitled to judgment as a matter of law. *See* Utah R. Civ. P. 56(c). Orvis presented sufficient evidence that no partnership interest existed because

---

**4.** Other jurisdictions have determined that mutuality of parties and reliance are not essential elements of the judicial estoppel doctrine. *See Burnes v. Pemco Aeroplex, Inc.*, 291 F.3d 1282, 1286 (11th Cir.2002) ("The doctrine of judicial estoppel protects the integrity of the judicial system, not the litigants; therefore, numerous courts have concluded, and we agree, that 'while privity and/or detrimental reliance are often present in judicial estoppel cases, they are not required.'" (quoting *Ryan Operations G.P. v. Santiam-Midwest Lumber Co.*, 81 F.3d 355, 362 (3d Cir.1996))); *see also Patriot Cinemas, Inc. v. General Cinemas Corp.*, 834 F.2d 208, 214 (1st Cir.1987); *Edwards v. Aetna Life Ins. Co.*, 690 F.2d 595, 598 (6th Cir.1982).

For reasons explained in our analysis, we need not analyze each element of the judicial estoppel doctrine in this matter; however, if we did, we would not depart from the controlling precedent in *Tracy Loan & Trust Co. v. Openshaw Investment Co.*, 102 Utah 509, 132 P.2d 388 (1942). In Utah, challenges to the reliance element have been raised only in dissents. *See Wiese v. Wiese*, 699 P.2d 700, 705 (Utah 1985) (Durham, J., dissenting) (stating that because "judicial estoppel has a strong and independent public policy justification," the party asserting the judicial estoppel doctrine should not have to show either prejudice or reliance.); *Royal Res. v. Gibralter Fin. Corp.*, 603 P.2d 793, 798 n. 7 (Utah 1979) (Maughan, J., dissenting) ("[E]lements such as reliance and injury or prejudice to the individual, which are generally essential to the operation of an equitable estoppel do not enter into a judicial estoppel or at least not to the same extent." (citing 31 C.J.S. *Estoppel* § 117(b))). Orvis cites *International Resources v. Dunfield*, 599 P.2d 515 (Utah 1979), as modifying the *Tracy Loan* criteria

for judicial estoppel. That case, however, involved res judicata and collateral estoppel, not judicial estoppel. *See id.* at 516, 132 P.2d 388. This court is obligated to follow binding precedent by the Utah Supreme Court. Therefore, we assume that mutuality and reliance continue to be necessary elements of judicial estoppel in Utah.

**5.** The "prior position" in *3D Constr.* was a mere failure to check a box on a bankruptcy form. *See 3D Constr. & Dev., L.L.C. v. Old Standard Life Ins. Co.*, 2005 UT App. 307, ¶ 4, 117 P.3d 1082.

**6.** In contrast to Utah caselaw, in *New Hampshire v. Maine*, 532 U.S. 742, 121 S.Ct. 1808, 149 L.Ed.2d 968 (2001), the U.S. Supreme Court elected not to establish a strict formula for determining when to apply judicial estoppel. *See id.* at 750–51, 121 S.Ct. 1808; *see also Lowery v. Stovall*, 92 F.3d 219, 223 (4th Cir.1996); *Patriot Cinemas, Inc. v. General Cinemas Corp.*, 834 F.2d 208, 212 (1st Cir.1987); *Allen v. Zurich Ins. Co.*, 667 F.2d 1162, 1166 (4th Cir.1982). Nonetheless, in *New Hampshire v. Maine*, the Court enumerated several considerations adopted from other courts. *See* 532 U.S. at 750–51, 121 S.Ct. 1808. The Court noted that courts typically consider whether (1) the party's earlier position is inconsistent with its later position, (2) the court accepted the party's earlier inconsistent position "so that judicial acceptance of an inconsistent position in a later proceeding would create the perception that either the first or second court was misled," and (3) "the party seeking to assert an inconsistent position would derive an unfair advantage or impose an unfair detriment on the opposing party if not estopped." *Id.* at 751, 121 S.Ct. 1808 (quotations and citations omitted).

Johnson, in sworn testimony in a prior judicial proceeding, declared that he had no such interest. "[O]nce the moving party challenges an element of the nonmoving party's case on the basis that no genuine issue of material fact exists, the burden then shifts to the nonmoving party to present evidence that is sufficient to establish a genuine issue of material fact." *Waddoups v. Amalgamated Sugar Co.*, 2002 UT 69, ¶ 31, 54 P.3d 1054.[7]

¶ 17 In response to Orvis's motion for summary judgment, Johnson asserted that three elements of judicial estoppel were disputed. Those elements were (1) whether Orvis and Johnson or their privies were parties in both actions, (2) whether both proceedings involved the same subject matter, and (3) whether Johnson was successful in the prior proceeding. Johnson did not argue that reliance and bad faith were necessary elements upon which there were disputed material facts. Orvis argues that Johnson waived those arguments by not raising them before the trial court. *See Brookside Mobile Home Park v. Peebles*, 2002 UT 48, ¶ 14, 48 P.3d 968 ("[I]n order to preserve an issue for appeal the issue must be presented to the trial court in such a way that the trial court has an opportunity to rule on that issue." (quotations and citation omitted)). Johnson, however, argues the trial court committed manifest error by failing to sua sponte analyze those two elements. We disagree. The trial court rightfully assumed, in reliance on Johnson's filings, that Johnson claimed that only those elements he actually discussed were relevant to the case and presented disputed material issues of fact. Accordingly, we do not address either bad faith or reliance.[8]

¶ 18 Furthermore, Johnson failed to identify issues of material fact regarding the three elements he raised before the trial court. Pursuant to the first element, both Orvis and Johnson were parties or privies thereof in both the SBA proceeding and the present litigation. Orvis and the SBA were privies because Orvis purchased the SBA judgment against Johnson prior to the commencement of the present litigation. *See Tracy Loan & Trust Co. v. Openshaw Inv. Co.*, 102 Utah 509, 132 P.2d 388, 390 (1942) ("[A] person may not, to the prejudice of another person[,] deny any position taken in a prior judicial proceeding between the same persons or their privies.").[9] In contrast, Johnson argues that there was no valid assignment because Orvis purchased the judgment with "monies misappropriated from the partnership" and "in violation of partner and lawyer fiduciary duties." He contends that genuine issues of material fact exist regarding misappropriation and violation of fiduciary duties. He asserts that if there was privity, it was between the *partnership* as assignee and the

7. Our colleague's concurring opinion maintains that in this case, as in *Shaw Resources Limited, L.L.C. v. Pruitt, Gushee & Bachtell, P.C.*, 2006 UT App 313, 142 P.3d 560, we have applied the standard for summary judgment described in *Celotex Corp. v. Catrett*, 477 U.S. 317, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986), which has not been adopted by the Utah Supreme Court. *See Harline v. Barker*, 912 P.2d 433, 445 n. 13 (Utah 1996) ("This court has not previously adopted the reasoning of the majority opinion in *Celotex*, which is not binding on us as a matter of law, and declines to do so today."). According to the concurring opinion, in this case and in *Shaw*, we have, in effect, adopted *Celotex* as the applicable test for summary judgment cases. We do not agree. To the contrary, the supreme court decision, *Waddoups v. Amalgamated Sugar Co.*, 2002 UT 69, 54 P.3d 1054, to which we refer above, cites rule 56 of the Utah Rules of Civil Procedure and another Utah Supreme Court case, *Grand County v. Rogers*, 2002 UT 25, 44 P.3d 734, as well as an Idaho Supreme Court case, as authority. *See Waddoups*, 2002 UT 69 at ¶ 31, 54 P.3d 1054. Consequently, we apply Utah governing law and specifically rule 56's requirement that the nonmoving party "must set forth specific facts showing that there is a genuine issue for trial." Utah R. Civ. P. 56(e). Neither this case nor *Shaw* relies on *Celotex*.

8. We do note, however, that the trial court stated in its minute entry that "there is no question of mistake. Mr. Johnson testified as he did, so as to avoid collection efforts from the [SBA]." Thus, there was no question of mistake or inadvertence in the SBA case. Similarly, it is undisputed that the SBA never collected on its judgment because Johnson testified that he had no available assets.

9. A person in privity with another is one who is "so identified in interest with another that he represents the same legal right," and "as applied to judgments or decrees of court, privity means one whose interest has been legally represented at the time." *Searle Bros. v. Searle*, 588 P.2d 689, 691 (Utah 1978) (quotations and citation omitted). Also included as being in privity is "a mutual or successive relationship to rights in property." *Id.*

SBA. Yet, even viewed in the light most favorable to Johnson, All Star Financial assigned the judgment solely to Orvis, an undisputed fact evidenced by the assignment attached to Johnson's affidavit. Furthermore, Johnson failed to argue or present any evidence of misappropriation or violation of fiduciary duties by Orvis.

¶ 19 The second element, consistent subject matter in the prior and present litigation, has also been satisfied. According to *Tracy Loan*, a person may not take a position in prior litigation and later deny it in subsequent litigation if the two proceedings involve the same subject matter. *See id.* Here, although the underlying action in the SBA proceedings dealt with contract and foreclosure, it was similar to the present litigation because both involved Johnson's alleged partnership interest with Orvis. As the trial court observed, the subject matter of the post-judgment proceedings by the SBA was to determine Johnson's assets, including ascertaining whether he had any partnership or limited liability company assets.

¶ 20 Furthermore, as previously discussed, Johnson's affidavit does not create material issues of fact beyond mere speculation. Nothing in Johnson's affidavit supports his assertion that his response in the SBA deposition to the question about partnerships was based on his belief that it referred only to partnerships in real estate. An affidavit is deficient if it "reveal[s] no evidentiary facts, but merely reflect[s] the affiant's unsubstantiated opinions and conclusions." *Treloggan v. Treloggan*, 699 P.2d 747, 748 (Utah 1985). Moreover, the SBA deposition questions do not mention real estate, indicating that Johnson's response to the question about whether he had any partnerships was an unqualified "no."

¶ 21 Likewise, the record sufficiently supports the next element that Johnson's position in the prior litigation was successfully maintained. Johnson's denial that he was involved in any partnerships was successfully maintained because the SBA did not collect on its judgment against Johnson. *See Tracy Loan*, 132 P.2d at 390. We therefore hold that the trial court did not err in granting Orvis's motion for summary judgment against Johnson.

## II. Judicial Bias

¶ 22 Johnson contends that the trial court's grant of Orvis's motion for summary judgment was based on bias against him. Johnson states that the trial judge was biased because he presided over a previous bar proceeding that resulted in Johnson's disbarment. In addition, he argues that the trial court had "preconceived notions" about Johnson and "preconceived certainty" about the "meaning of a few short words" from Johnson's deposition.

¶ 23 Because Johnson failed to properly preserve the issue of judicial bias by filing a motion to disqualify the judge and raises it for the first time on appeal, he must demonstrate that the trial court committed plain or manifest error. *See State v. Tueller*, 2001 UT App 317,¶ 9, 37 P.3d 1180. "To be considered plain or manifest ..., an error must be both harmful and obvious." *State v. Menzies*, 845 P.2d 220, 225 (Utah 1992). The alleged bias must "have some basis in fact and be grounded on more than mere conjecture and speculation." *In re M.L.*, 965 P.2d 551, 556 (Utah Ct.App.1998) (quotations and citation omitted). We have carefully examined the record and find no evidence of judicial bias against Johnson.

## CONCLUSION

¶ 24 In sum, Johnson failed to present genuine issues of material fact that a partnership existed between him and Orvis. We conclude that Johnson is precluded under the judicial estoppel doctrine from asserting the existence of a partnership. Accordingly, we affirm the trial court's grant of summary judgment in favor of Orvis and the court's entry of a declaratory judgment that Johnson does not have a right, claim, or interest in any of Orvis's businesses. We also reject Johnson's claim of judicial bias.

¶ 25 I CONCUR: GREGORY K. ORME, Judge.

BENCH, Presiding Judge (concurring):

¶ 26 In my recent dissent in *Shaw Resources Limited, L.L.C. v. Pruitt, Gushee & Bachtell, P.C.*, 2006 UT App 313, ¶¶ 61–68, 142 P.3d 560, I pointed out that "[t]he traditional rule is that summary judgment is available only where the moving party can affirmatively demonstrate that there is no genuine issue as to any material issues of fact and that the moving party is entitled to judgment as a matter of law." *Id.* at ¶ 62 (quotations and citation omitted). Because of *Celotex Corp. v. Catrett*, 477 U.S. 317, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986), the burden in federal courts has been shifted to the nonmoving party, aligning "the movant's production burden for summary judgment to the burden of proof that party would bear at trial." *Shaw Res. Ltd., L.L.C.*, 2006 UT App 313 at ¶ 63, 142 P.3d 560 (Bench, P.J., dissenting). In *Shaw*, I argued that Utah has never deliberately adopted the *Celotex* approach, and that the traditional rule for summary judgment should continue to be the controlling law in Utah. *See generally id.* at ¶¶ 64–68. In the present case, the main opinion again uses the burden-shifting *Celotex* standard. I reiterate my concern that the *Celotex* standard should not be considered the controlling authority in Utah.

¶ 27 Nevertheless, the doctrine of stare decisis establishes that " 'the first decision by a court on a particular question of law governs later decisions by the same court.' " *State v. Menzies*, 889 P.2d 393, 399 (Utah 1994) (quoting *State v. Thurman*, 846 P.2d 1256, 1269 (Utah 1993)). The majority opinion in *Shaw* utilized the burden-shifting *Celotex* standard for summary judgment, even in the face of my concerns. For the first time, in *Shaw*, Utah knowingly adopted the burden-shifting standard. Until such time as that approach is changed by the Utah Supreme Court, I am constrained to follow *Shaw*. I therefore concur, albeit reluctantly.

(4) open cases in municipal department were required to be transferred to newly created municipal court.